### DETERMINED IN

# THE SUPREME COURT

#### OF THE

# STATE OF WYOMING.

OCTOBER TERM, 1895.

## BOLLN v. METCALF.

PROMISSORY NOTES—CONSIDERATION—DURESS—EVIDENCE—PART-
NERSHIP—PRINCIPAL AND SURETY.

1. The settlement of an action, either begun or threatened, unless it be founded on a fraudulent or fictitious claim, is a valid consideration for promises by a third person to pay the claim.

2. The service made or threatened of an attachment in such action does not constitute duress.

3. Promissory notes given by a third person to one who is a surety upon the bond of a defaulting officer, to indemnify such surety, will be held as security or indemnity for the benefit of a co-surety equally with the payee named in the notes.

4. Even if the surety named as payee intended the indemnity for his own benefit to the exclusion of his co-surety the law will apply it for the benefit of both.

5. The notes being for the entire amount of the defalcation of the officer, and as equity will make the burden of payment and the benefit of indemnity equal between the sureties by contribution, the surety receiving the notes from the third person, would not be fully indemnified by anything less than the payment of the amount of the defalcation.

6. In a suit upon such notes in the name of the payee, he is entitled to recover the full amount, notwithstanding that he and his co-surety together may have paid the amount of the defalcation in the discharge of their obligation under the bond.

7.  In the absence of fraud or collusion, a judgment is con-
clusive evidence, even against a stranger, of the relation of
debtor and creditor between the parties thereto, and of the
amount of the indebtedness.

8.  The maker of the notes and the defaulting officer having
been partners conducting a mercantile establishment, and the
purpose of the former, in giving the notes to indemnify the
surety, being to save the partnership property from attach-
ment in a suit by the sureties against their principal (the
officer) it is immaterial whether or not an action had been
commenced, or a writ of attachment issued.

9.  Held, also, that the trial court properly excluded from the
consideration of the jury·questions which were raised by the
defense respecting the actual commencement of an action
against the officer by the sureties and the validity of the writ
of attachment issued therein.

10.  In a suit upon the said notes, it is immaterial that the
maker's former partner — the defaulting officer — had no real
interest in the partnership property on account of his having
received from the firm more than his interest amounted to.

GROESBECK, C. J., DISSENTING.

[Amended petition filed in District Court, March 21, 1892.  De-
cided Oct. 25, 1895.  Rehearing denied April 16, 1896].

ERROR to District Court for Converse County, HON.
RICHARD H SCOTT, Judge.

This was an action brought by George W. Metcalf
against George Bolln upon two promissory notes.  The
defenses interposed were, in addition to a denial of the
allegations of the petition, want of consideration, duress,
false representations connected with the alleged duress,
and that the notes did not constitute the entire contract.
After the introduction of all the testimony, the defendant
requested the court to give certain instructions to the jury,
and also moved the court to submit to the jury certain
questions of fact for their separate answers thereto in the
nature of a special verdict.  All of the requested instruc-
tions were refused.  The motion to submit special questions
was denied, and the court directed the jury to return a
verdict for plaintiff for $370.45.  Judgment was awarded

upon the verdict returned as directed, and defendant prosecuted error.   George Bolln and one Rastaetter were partners conducting a mercantile business.   The latter was treasurer of a school district.   He was a defaulter in said office and absconded.   Metcalf and one Schlichter were sureties on his official bond.   After Rastaetter absconded, and before his sureties had paid any money by reason of the bond, they claimed to have brought suit against Rastaetter for the recovery of the amount of the default, secured the issuance of an attachment, and caused it to be levied or threatened to be levied upon the partnership property of Bolln and Rastaetter.   The levy was released, or the threat was not carried out, upon Bolln giving to Metcalf the notes in suit.   A contract referring to the notes was signed, which is copied in the opinion.   Subsequently suit was brought on the bond of Rastaetter, and judgment rendered against the sureties,— Metcalf and Schlichter,— which they paid.   The notes were for the amount of the defalcation.   The defendant in the case at bar insisted that the attachment suit had not, in reality, been commenced ;   that the writ which was levied or threatened to be levied was not valid ; and that Metcalf and Schlichter had no actual cause of action when they sued out the attachment if it was issued.   The other facts appear in the opinions.

*H. Donzelmann* for plaintiff in error.

It was error to permit the introduction in evidence of the petition in the case of the county commissioners in the suit upon the bond of the defaulting officer, because that was res inter alias acta.   There was evidence tending to show that the pretended levy upon the stock of goods of plaintiff in error was not made upon any valid writ of attachment.   Likewise, that the goods were the sole property of plaintiff in error; and that no legal cause of action in favor of the plaintiffs — sureties — in the suit against the defaulting officer.   This all shows that the purpose of defendant in error was to extort from plaintiff

in error money or the promise to pay money. This constituted duress sufficient to avoid the notes. (Cooley on Torts, 2d ed., p. 593; Chandler v. Sanger, 114 Mass., 364; Sartnell v. Wharton, 28 Vt., 370; Richardson v. Duncan 3 N. H., 508; Colwell v. Peden, 3 Watts, 327; Adams v. Reeves, 68 N. C., 134; 1 Story's Eq., 239; Bennet v. Ford, 47 Ind., 264; Spaids v. Barrett, 57 Ill., 289; Fashay v. Ferguson, 5 Hill, 158; Steph., nisi prius 1.358; Chase, v. Divinal, 7 Greenl., 134; Oates v. Hudson, 6 Exch., 346; Nelson v. Suddarth, 1 H. & M., 350; Adams v. Schiffer, 11 Colo., 15; Vyne v. Glenn, 41 Mich., 112; Oliphant v. Markham, 79 Tex., 543; White v. Heylman, 34 Pa. St., 142; Atlee v. Backhouse, 3 Mees. & W., 650; Sasfertas v. Jennings, 1 Bay (S. C.), 470; Collins v. Westbury, 2 id., 211; Crawford v. Cato, 22 Ga., 594; Gates v. Dundon, 18 N. Y., Supp., 149; Devlin v. Burns, 147 Pa. St., 168.)

*On petition for Rehearing.* — A partnership at will may be dissolved by either partner at any time, and his intent may be gathered from his acts. (Pars. on Part., 438; Whitman v. Leonard, 3 Pick., 179; Arnold v. Brown, 24 id., 94; Ayer v. Ayer, 41 Vt., 349; Hamill v. Hamill, 27 Md., 686; Durbin v. Barber, 14 O., 315.) The partnership between Bolln and Rastaetter was one at will, and it was not necessary for Bolln to apply to a court for dissolution upon the absconding of Rastaetter. (Pars. Part., 499; Koenig v. Adams, 37 Kan., 55; Blaker v. Lands, 29 id., 552.) Bolln had given public newspaper notice of the dissolution, so that Metcalf, when he commenced the attachment suit, had notice of such dissolution. It was requisite for him to have proved that Rastaetter had an interest in the goods in Bolln's possession, subject to attachment. It was prejudicial error to exclude testimony offered by Bolln to show the absence of any interest in Rastaetter. As a rule, a judgment is not admissible in evidence for or against a stranger to the action in which it was rendered. (12 Am. & Eng. Ency. L., p. 149 d. n. 4.) Bolln was not in privity with Rastaetter, the principal defendant in the suit. (2 Black on Judg., Sec. 549.)

The judgment was not competent evidence of the amount Metcalf did pay, nor for which he was liable. (2 Black, J. 555, 573; Freeman on J., 181; Brandt on Sur. & Guar., Sec. 246; 12 Am. & Eng. Ency. L., p. 100; Means v. Hicks, 65 Ala., 241; Fletcher v. Jackson, 23 Vt., 592.)

The so-called indemnity was given to secure Metcalf against loss. If he had received the notes under any agreement with Rastaetter, the principal debtor, or from him, or if Bolln had given them under an agreement with Rastaetter, then the rule laid down by the court in original opinion as to the rights of the co-surety would apply. But under the peculiar circumstances of the case at bar, Metcalf was not obligated to hold Schlichter — his co-surety — harmless. (Harris on Subr., Sec. 174, 803; Liggett v. Mc Clellan, 39 O. St., 627.) The notes were without consideration. Metcalf had not agreed to relinquish his claim against Rastaetter. The mere taking of collateral security for an existing indebtedness does not per se extend the time of payment, or suspend the remedy on the original indebtedness. (Gehu v. Neimcewiz, 11 Wend., 312; Bank v. Ives, 15 id., 501; Stalker v. McDonald, 6 Hill, 93; Austin v. Curtis, 31 Vt., 64; Wood v. Robinson, 22 N. Y., 564; Corey v. White, 52 id., 138; Bangs v. Mosher, 23 Barb. 479.)

*Gibson Clark*, for defendant in error.

In a suit by the sureties on the bond against the principal — Rastaetter — the judgment against them would have been admissible. (2 Black on Judg., Sec. 574.) It was equally admissible against Bolln on the indemnity notes to show the amount of the defalcation of Rastaetter, especially as under the agreement between Bolln and Metcalf, the former was entitled to credit for any amount of the notes in excess of the defalcation. (Ins. Co. v. Wilson, 34 N. Y., 275; Konitsky v. Meyer, 49 id., 571; 1 Brandt on Sur., Sec. 214; 12 Am. and Eng. Ency. L., pp. 98, 99, and notes.) Had the court submitted the question to the jury respecting the issuance of the attachment, and had the

jury found that it had not been issued, it would have been
the duty of the court to vacate such finding under the evi-
dence; hence it follows that there was no error in taking
the question from the jury.   (Corning v. Troy, etc., 44
N. Y., 577; 11 Am. and Eng. Ency. L., p. 246 and note 4;
id., pp. 244, 245 and note; Thompson v. Press Co., 37
Minn., 285.)   The absconding of Rastaetter did not have
the effect of vesting in Bolln the sole ownership of the part-
nership property.   (17 Am. and Eng. Ency. L., p. 1108 and
note; 2 Bates on Part., 1097–1112; Trafford v. Hubbard,
15 R. I., 326.)   The sureties had the right to commence the
attachment suit.   (Rev. Stat., Sec. 3051; Gans v. Thomp-
son, 11 O. St., 579.)   The levy of the attachment did not
constitute duress (Taylor v. Cottrell, 16 Ill., 93) because
where a party threatens nothing which he has not a legal right
to perform, there is no duress.   (Skeate v. Beals, 11 Ad. and
El., 983; Clark on Contr., 361, note; Preston v. Boston, 12
Pick., 14; 6 Am. and Eng. Ency. L., pp. 60 and 61;
Kingsbury v. Sargent, 83 Me., 230; Storer v. Mitchell, 45
Ill., 213; Wilcox v. Howland, Pick., 167; 2 Bates on Part.,
Sec. 1105.)   Under the 5th defense stating that Rastaetter
was not short in his accounts, the burden was upon Bolln to
establish the truth of such statement.   (2 Pars. on N. and
B., 145 and 537; Smalley v. Bristol, 1 Mich., 153; Averill
v. Field, 3 Scam., 390; 1 Daniel Neg. Instr., Sec. 159.)
A debt from a third person is in general good consideration
for a note.   (1 Pars. on N. and B., 195; 1 Daniel Neg.
Instr; Sec. 185.)   The plaintiff having made out his case by
producing the notes sued on, and proving their execution,
the consideration being presumed, he was entitled to judg-
ment unless the defendant overcame the proofs by a pre-
ponderance of evidence to the contrary.   (2 Greenleaf
Ev., Sec. 172 and note; People v. Day, 123 Mass., 520.)
A compromise of a disputed claim, or the discontinuance of
a suit already brought, will uphold a promise, although
the demand was unfounded.   (3 Am. and Eng. Ency. L., p.
837 and notes; Crans v. Hunter, 28 N. Y., 389.)   The
waiver of any legal or equitable right is a sufficient consid-

eration for a promise. (1 Pars. on Contr., 444.) The notes were based upon a sufficient consideration. Mc Kinley v. Watkins, 13 Ill., 140; Sigsworth v. Coulter, 18 id., 204; Miller v. Hawker, 66 id., 186; 1 Pars. N. and B., 196 and 198; Mull v. Van Frees, 50 Cal., 547; People v. Day, 123 Mass., 520; Foster v. Fulton, 6 id., 58; Delane v. Bartlett, 6 Cush., 364; Russell v. Cook, 3 Hill, 504.)

CONAWAY, JUSTICE.

This is an action brought in the district court by defendant in error on two promissory notes, the execution of which in his favor by plaintiff in error is admitted. The notes were executed under the following circumstances : One Charles Rastaetter was treasurer of school district number six in Converse County, and defendant in error and John Schlichter were sureties on his bond. Rastaetter was, or had been, partner of plaintiff in error in a mercantile business. Shortly prior to April 7, 1890, Rastaetter absconded, and was defaulter in the funds of the school district to the amount of $542.82. The notes are of that date and for that amount — one for $300.00 at sixty days and the other for $242.82 at four months, both with interest at twelve per cent per annum from maturity.

At the time of the execution of the notes, defendant in error and Charles Schlichter, sureties of Rastaetter, were attempting to have an attachment served upon the interest or supposed interest of Rastaetter in the property of the partnership consisting of Rastaetter and plaintiff in error. Upon the execution of the notes these proceedings were discontinued. It is claimed that this suit in attachment, if commenced at all, was not in proper form, and that the notes were given without consideration and under duress ; but it is immaterial whether the action was in proper form, or whether it was commenced at all, or not. The parties had a right to prosecute an action by attachment against Rastaetter to obtain indemnity as his sureties, and the alleged mistake in the form of action is immaterial. The settlement of an action, either begun or threatened, unless

it be founded on a fraudulent or fictitious claim, is a valid consideration for promises by a third party to pay the claim, and the service or threatened service of an attachment in such action is not duress of goods. So the defense of no consideration and of duress fails.

Defendant in error testifies that pending attachment proceedings he told Bolln, who wished to avoid the service of the attachment of the interest or supposed interest of the absconding partner, that in order to discontinue the attachment suit he (plaintiff in error) must have security. He further testifies that the notes sued on were given to indemnify him ; that he thereupon stopped the attachment proceedings and the suit against Rastaetter, and ''this closed up the entire transaction.'' This portion of the testimony is not contradicted, and is relied upon by both parties.

At the time of the execution of the notes, the following written agreement was signed by defendant in error:

''Whereas George Bolln has this 7th day of April, A. D. 1890, made two notes for the amount and sum of five hundred and forty-two dollars, being the amount claimed to be short by Charles Rastaetter as treasurer of school district number six. It being hereby agreed by the payee of said notes that if the said amount found to be due said district is less than aforesaid amount it shall be allowed and credited on said notes.''

The defalcation was for the exact amount of the notes, and the sureties, defendant in error and Charles Schlichter, afterward paid a judgment for that amount against them and in favor of the school district. The security or indemnity, which defendant in error had obtained, was these notes of plaintiff in error for the exact amount of the defalcation of Rastaetter. And this security or indemnity was for the benefit of his co-surety, Charles Schlichter, equally with himself. Even if defendant in error intended this indemnity for his own benefit to the exclusion of his co-surety, the law will apply it for the benefit of both. (24 Am. & Eng. Ency. of Law, p. 815, subdiv. 7, note 3,

and authorities cited.)    Brandt on Suretyship, Sec. 268;
Harris on Subrogation, Sec. 207.

This legal proposition is nowhere questioned or doubted
by any authority, so far as we are advised, and it is not
necessary to discuss the question, as there are no conflict-
ing authorities to weigh.    It is immaterial in what propor-
tion the two sureties paid the defalcation.    Equity will
make the burden of payment and the benefit of the indem-.
nity equal between them by contribution.    And defendant
in error could be fully indemnified by nothing less than
the payment of the amount of the defalcation.

In our opinion the judgment of the trial court should
have been rendered in favor of defendant in error for the
entire amount of the notes.    It was for a less amount, but
he has not appealed.    The other party can not complain
that the amount of the judgment against him is too small.
Judgment affirmed.

Justice Potter, having announced his disqualification to
sit in the hearing of this cause, the other justices called in
Judge Hayford of the second judicial district.

HAYFORD, DIST. J., concurs.

GROESBECK, C. J., dissents.

ON PETITION FOR REHEARING.

CONAWAY, JUSTICE.

It is urged that the majority of this court were in error
in saying on the first hearing of this cause that the indem-
nity against loss obtained by Metcalf as surety for Charles
Rastaetter was for the benefit of his co-surety equally with
himself.    It is urged that this rule applies only where the
indemnity is furnished by the principal debtor, and not
where it is furnished by a third party.    It is true that a
third party may indemnify one of several sureties to the
exclusion of the co-sureties.    This is a right of the party
furnishing the indemnity so to limit his liability.    There
is no lack of authority on the part of a co-surety to accept
indemnity from a third party sufficient to secure all of the
sureties against loss.    The indemnity furnished in this

case was not a contract to hold one surety harmless. It
was to pay so, much money if the defalcation should not be
found to be for a less amount. I am still of the opinion
that such a contract is for the benefit of both sureties.
The contract in this case was to pay an amount which
proved to be the exact amount of the defalcation, which
must have been known at the time of the execution of the
contract. It is true defendant in error testifies that he
took the notes to indemnify himself. That was, no doubt,
his object. That was no obstacle in the way of his indem-
nifying his co-surety also. But this judgment should be
sustained on another ground. It is actually for the
amount necessary to indemnify defendant in error alone.
If the condition of the contract can be construed as mean-
ing that the defendant in error alone was indemnified, the
judgment should still be sustained.

It is urged that there was error of law occuring at the
trial in the admission in evidence of a former judgment
against defendant in error and his co-surety, John
Schlichter, in favor of the school district on account of the
defalcation of Rastaetter. 12 Am. & Eng. Ency. of Law,
p. 84, is cited in support of this contention, but that
authority seems not to sustain the point to which it is cited.
It reads as follows: "As a rule, a judgment is not admis-
"sible in evidence against a stranger to the action in which
"it was rendered. An agent or attorney is not estopped by
"a judgment because he conducted the suit, nor is a wit-
"ness bound by a judgment in which he testifies. But in
"the absence of fraud and collusion, a judgment is conclu-
"sive evidence, even against a stranger, of the relation of
"debtor and creditor between the parties thereto, and of
"the amount of the indebtedness." The amount of the
indebtedness is the fact to be determined in the case at
bar, not the validity of the former judgment. The limita-
tion of this rule is stated in note 3, p. 86: "Supposing
"such third persons were not bound with or for the parties
"found liable, the rule applies." And further: "Accord-
"ing to some authorities, the judgment is *prima facie* evi-

"dence in such cases." Bolln was not bound with or for Metcalf. He contracted directly with Metcalf.

A question has been raised as to the necessity of joining the co-surety, Schlichter, as party plaintiff in the action. This seems to be unnecessary in either view of the case. If the indemnity was for the benefit of Metcalf alone, he is the only party in interest, and the only one competent to sue. If for the benefit of Metcalf and Schlichter both, then Metcalf is a "person with whom or in whose name a "contract is made for the benefit of another," and may sue alone. See Rev. Stat., Sec. 2384.

At the time plaintiff in error executed the notes sued on, the sheriff of the county was proceeding to take possession of the goods in question by virtue of a writ of attachment against Rastaetter. It is urged that there was evidence tending to show that no such writ of attachment had been issued, and that no bond for the attachment had been filed, and that the suit in which the attachment was claimed to have been issued was not really commenced. It is urged that it was error to take this issue from the jury. If the consideration for the notes had been the forbearance to proceed under this particular writ, this would be plausible. But it would have been of small consequence to plaintiff in error to protect himself from this writ, and leave matters so that another would be immediately sued out and served on the goods. If any of the objections now urged to the writ are truthful, he could have made short work of that writ by raising those objections in a proper proceeding in the trial court, and without giving any notes or other indemnity to Rastaetter's sureties or either of them. But his object was to prevent the seizure of the goods by attachment. He testifies, "I "gave these two notes to save my property from attach-"ment." A decision that the particular writ which the sheriff held was invalid, would not have accomplished this object. Plaintiff in error was evidently aware of this, and he accomplished his object in another way, by giving as indemnity the notes which he now repudiates. It is

claimed that notwithstanding this indemnity, Metcalf or Schlichter might have commenced another action, and might have attached Rastaetter's interest in the goods. This is not conceded. It is negatived by the testimony of both parties. But it is not necessary to discuss this proposition. It was not done nor attempted. So plaintiff in error received the benefit he contracted for as, the consideration of his notes. The court wisely took from the jury the irrelevant and perplexing questions raised as to the actual commencement of an action and the validity of the writ of attachment. It was immaterial whether an action had been commenced or a writ issued or not. Plaintiff in error now claims that Rastaetter had no interest in the goods — that Rastaetter absconded on the third day of April, and plaintiff in error, of his own motion, dissolved the partnership on the fifth. It may be well that he could so dissolve the partnership and proceed to close up the partnership business. But he could not so destroy Rastaetter's interest in the goods. That remained the same after the dissolution as before, and subject to the same proceedings on account of Rastaetter's liabilities. Plaintiff in error now testifies that Rastaetter had no interest in the partnership property on account of having received from the firm more than his interest amounted to. But all of this is immaterial. Plaintiff in error did not defend the goods which he claims were exclusively his own on this or any other ground now urged. He avoided all litigation by executing and delivering as indemnity the notes now sued on. And defendant in error, in consequence, lost his opportunity to establish, if he could, that Rastaetter had an interest subject to attachment. Here are two sufficient considerations for the notes. Bolln says: "I gave these two notes, for I "did not know whether I would have to pay the notes or "not." That is, at the time of promising to pay and accepting the consideration he did not intend to pay, and he now asks this court to aid him in completing the fraud. As to the material and controlling facts of this case, there is no

conflict of testimony. The trial court exercised a wise discretion in taking from the jury the decision of the case, cumbered as it was with a mass of irrelevant and confusing matter. The principal ground for a new trial now urged is that this matter should be submitted to a jury. In my opinion, it is a matter which on a new trial should be excluded from the evidence. If the amount of Rastaetter's defalcation had proved to be less than the amount of the notes, a corresponding amount was to be credited on the notes. This contingency did not occur, and it is the only contingency under which a deduction from the amount of the notes is provided for. The judgment of the district court is affirmed.

*Rehearing denied.*

HAYFORD, DIST. J., concurs.

GROESBECK, CHIEF JUSTICE, dissenting.

I think I should give my reasons for dissenting from the majority opinion, particularly as I merely announced my dissent upon the original hearing. The plaintiff below brought suit upon two promissory notes executed by Bolln, the defendant, and alleged in his petition nothing more than is ordinarily alleged in such a suit. The defendant in his answer set up five defenses, one of which was a general denial. The substance of the other defenses is as follows: That the promissory notes sued upon were obtained without any consideration whatever, and at the time of the execution of the notes, defendant was not and never had been indebted to plaintiff in any sum whatever; that the plaintiff as an inducement to the defendant to execute and deliver said notes, falsely and fraudulently represented to defendant that one Charles Rastaetter was indebted to plaintiff in the sum of $542.82 on account of the defalcation of Rastaetter to a certain school district in Converse County, of which he, Rastaetter, was treasurer, said Rastaetter having absconded, and that plaintiff "had to pay" the amount of the defalcation as surety on the official bond of Rastaetter; that Rastaetter had been a

co-partner with Bolln in a certain business at Douglas, Converse County, Wyo., but at the time of the execution and delivery of the said promissory notes, Rastaetter had no interest whatever in the property of the firm of Bolln and Rastaetter; that plaintiff at the time of the execution and delivery of said notes represented that Rastaetter was indebted to plaintiff in the sum of $542.82, which was untrue, and that plaintiff obtained said notes by threats of irreparable damage to the property of defendant, and by threatening to wrongfully seize and attach the property of defendant, the plaintiff well knowing that he had no cause of action against the defendant, and that Rastaetter had no interest in any of the property in possession of the defendant and no property whatever in the State; that defendant while "mentally laboring under said threats," and to save his property from such wrongful seizure by plaintiff, executed said promissory notes and delivered the same to plaintiff, and that there was no consideration for said notes; that the said notes were not the whole and complete contracts between the parties, as there was a collateral agreement in writing, by which the plaintiff agreed that said notes were executed to pay the debt of one Charles Rastaetter to the school district, and if the said amount found to be due from said Rastaetter to the school district was less than the amount mentioned in said notes, the same should be allowed and credited on said notes, that Rastaetter was not short in his accounts in the sum mentioned in said notes, nor in any sum whatever.

A reply was filed to the answer, admitting that the defendant Bolln had been engaged with Rastaetter in business dealings, and that they had been doing business under the name of Bolln and Rastaetter; that at the time of the execution of the notes, Rastaetter was a fugitive from justice and a non-resident of the State, and that the plaintiff well knew this; and, further, the plaintiff denied that the collateral agreement was made at the time of the execution and delivery of the notes, but asserts that it was made thereafter, and denied that by the terms of said agreement

plaintiff agreed that the notes were given to pay the debt of Rastaetter to the school district. The plaintiff denies that there was no other consideration than that stated in the answer, does not state what the consideration for the notes was, but avers that they were each given for a good and valuable consideration. The reply also denies that Rastaetter was not short in his accounts to the school district, but alleges that at the time of the execution of the notes, that Rastaetter was short in his accounts as treasurer of the school district, the full sum named in the notes. The reply denies all matters set up in the answer not admitted in the reply.

The collateral agreement referred to, executed by plaintiff to defendant, is as follows:

"Whereas, George Bolln has this 7th day of April, "A. D. 1890, made two notes for the amount and sum of "five hundred and forty-two dollars, being the amount "claimed to be short by Charles Rastaetter, as treasurer of "school district No. six (6). It being hereby agreed by the "payee of said notes that if the said amount found to be due "said district is less than aforesaid amount, it shall be "allowed and credited on said notes." The writing was signed by the payee of the notes, the defendant in error, Metcalf, and was admitted in evidence. The cause was tried to a jury, and during the trial and after the evidence was all in, the court, over the objection of the defendant below, instructed the jury to return a verdict for $370.54, although special findings of fact were asked by defendant to be returned by the jury and certain instructions were requested and offered by him, all of which were refused by the court. All evidence offered on behalf of the defendant below showing or tending to show that Rastaetter had no interest in the property attached as the property of Bolln and Rastaetter, was excluded and such evidence as had been introduced to establish the fact was stricken out, although that question was at issue under the pleadings. I do not care to discuss the assignment of error involving the correctness of the ruling of the trial court upon the rejection

of this proffered testimony, as there is abundant reason for reversal without discussing this proposition. I have thus far given a brief outline of the pleadings and the proceedings of the court in order that my position can be readily understood, and will now give my reasons for dissenting:

1. It is clear and undisputed that the promissory notes sued upon were executed and delivered for the purpose of indemnifying Metcalf, the payee, from any loss that might accrue to him, and to him alone, as one of the sureties on the official bond of Rastaetter as treasurer of the school district. So Metcalf himself testifies and the notes were executed to him alone as payee and were made payable to his order. A question and answer appearing in the evidence will suffice to show that such was Metcalf's understanding and that of his counsel in the trial court: "You "stated that you took the notes to indemnify you against "any loss that might arise from your being a surety on Ras- "taetter's bond. Now state how much, if any, money you "had to pay as such surety?" To this question Metcalf replied: "Mr. Schlichter and myself, he being a surety "with me on Rastaetter's bond, we paid five hundred and "forty-two dollars on a judgment rendered against us in the "court at the next term." This scrap of evidence is all that appears in the record showing what amount was paid by Metcalf to satisfy the claim of the school district on the official bond of Rastaetter, upon which he was surety. The judgment referred to by the witness was rendered in the district court of Converse County in a suit brought for the use of the school district against Metcalf and Schlichter as sureties upon Rastaetter's bond; and it was rendered Oct. 22, 1890, for the sum of $542.82 with interest thereon from June 3, 1890, at the rate of twelve per cent. per annum, the actual amount of the judgment being $567.97, with costs in an amount not taxed. The amount of this judgment therefore was not paid, but only $542.00 thereon. The evidence was wholly insufficient to show what Metcalf paid. He might have paid one half or one third, or any other proportion thereof, for aught that

can be gleaned from the record. The trial court assumed evidently that he paid one half of it, but this is not borne out by any evidence. Even on this basis, the judgment is for a greater amount than it should have been, as I have been unable by any computation to reach the amount of the judgment, $370.54, including interest and attorney fees, stipulated for in the notes. I know of no rule of presumption that when two parties contribute to the payment of a judgment, or claim, that each one pays one half, and to so assume in the lack of proof to that effect, is to hold to an extreme and dangerous rule. Metcalf could easily have stated how much he himself actually paid, and if his answer is evasive, he alone should suffer from the suppression of the facts. I can not agree for a moment with the contention of the majority of this court in its opinion on the original hearing that Bolln was liable for the entire amount of Rastaetter's defalcation. The plaintiff below positively swears that the notes were executed and delivered to indemnify him against loss, and, therefore, they were not executed to settle the amount of Rastaetter's defalcation, and there is no evidence to the contrary. He does not institute suit for and on behalf of his co-surety, and claims the whole amount to be due to himself. There was no pretense in the trial court that Schlichter had any interest in the notes, and the assumption of the trial court that Metcalf could only get judgment for the amount he actually paid, would have been correct, if there was any evidence to show that amount, and if no defenses of duress and failure of consideration had been interposed. The notes were executed to indemnify Metcalf not Schlichter, who although a witness in the case, gave no evidence upon this question, and has never made any claim to any portion of the notes. The collateral agreement upon which so much stress has been laid, explains itself, and merely limits the liability of the maker of the notes, in case the amount of the defalcation should be less than the amount of the notes, and in no way changes the original contract that Metcalf alone should be

2

indemnified against loss. He might have been compelled to pay the entire amount of the defalcation, and in that case, Bolln had assumed it, in case he was bound to pay the notes. The notes were not given for the purpose of indemnifying Schlichter, and consequently Metcalf could only recover the amount of his loss and his payment. The judgment is not for the amount actually necessary to indemnify Metcalf, as I have shown, as there is no evidence to show how much he paid on the judgment, there being a total failure of proof in this particular.

2. The notes sued on were executed to secure the release of an attachment levied upon the interest of Rastaetter in the former copartnership of Bolln and Rastaetter, and under the writ, the sheriff levied upon the entire stock of goods, in order to get possession of the interest of Rastaetter. It was to free his business that this levy or threatened levy by the sheriff armed with the writ, that the notes were executed. It makes little difference whether or not the levy was actually made, if it was threatened by the sheriff under a writ. Bolln did not make a settlement with Metcalf while proceedings were threatened, although requested to do so, and it is clear from the testimony that the sole inducement for indemnifying Metcalf was to obtain a release from the attachment. The sheriff testifies that the goods were levied upon under a valid writ of attachment. The deputy clerk of the court, the only officer apparently in charge of the office, testifies that he issued no writ of attachment in the cause and that no suit was commenced. He further states that the attorney for Metcalf desired to secure some advantage over other creditors and might commence suit in attachment against Rastaetter. He requested that the writ of attachment should be completed by the signature of the clerk and the seal of the court, so that he could use it. The deputy clerk says that he did not affix either his signature or the seal of the court to the writ, which was drawn up by the attorney, because no bond had been filed and no sureties given; that the suit was never commenced, that the

attorney filled out the papers himself and wanted them ready in case anybody else would undertake to bring suit; that both Metcalf and his attorney told him, the clerk, that they did not want the suit commenced, but to have the papers ready "to head off any other creditors who "might come in." Metcalf denies this, and asserts that he did execute a bond, but it nowhere appears that it was filed or tendered to the clerk for filing. The petition in the case shows the filing mark of the clerk on April 7, 1890, and the affidavit for attachment two days earlier, but no undertaking in attachment is found in the files, and no suit was entered upon the appearance docket, where it should be entered at the commencement of suit. The writ of attachment was never returned. One witness, not an officer of the court, swears that it was left with him, and was afterwards torn up with some loose papers. The sheriff testifies that the writ had the signature of the clerk and the seal of the court, and that he obtained the writ from the plaintiff, who states that he received it from his attorney. This attorney who prepared all the papers was not a witness, although his testimony would have been vital, and no excuse was offered why he was not produced as a witness or his deposition taken.

There was then a conflict of testimony upon this point of the commencement of the suit and the issuing of the attachment writ, and this matter should have been submitted to the jury, as the only possible consideration for the execution of the notes was the dismissal of the attachment suit to release the goods of Bolln, the maker of the notes from attachment with those of his former co-partner. No claim, however well founded, should be permitted to be enforced under the guise of a sham suit, and the process of the court should not be abused to secure the enforcement of a settlement of even an undisputed claim. However immaterial the informality of the proceedings were for attachment, there certainly was a question whether the suit was ever begun, and whether the defendant Bolln was coerced into executing the notes to prevent

the seizure of his interest in the former co-partnership, and the delay and consequent loss and perhaps the destruction of his business in case the levy was permitted to stand. As duress of goods and failure of consideration were pleaded, although not with such particularity as would perhaps be required if objection in proper form had been made to the answer, under the testimony I have narrated, owing to the irreconcilable conflict between the witnesses, the jury under proper instructions should have been called upon to determine the disputed facts. There is no question of the right of the court to take the case from the jury where the testimony is clear and undisputed, or where there is a total failure of proof on the issues raised by the pleadings. "Where the facts are undisputed or "admitted, the only questions for decision are questions "of law. In such a case, it only remains for the judge to "apply the law to the facts, and to decide whether they "constitute an action or defense. But where the facts are "disputed, and the evidence in respect to them is conflict-"ing, such is not the case. Here it is not for the court to "find the facts, and from them to say whether the law is "for one party or the other." Thompson on Trials, Sec. 2262. In upholding the action of the trial court in the case at bar, it must necessarily be held that the issues of failure of consideration and duress of goods were not issues in the case, although pleaded without objection, or that these issues were not sustained by any proof, and this is not true. Duress of goods under oppressive circumstances is generally now held as sufficient to avoid a contract, and if the detention were obviously without right, the promise would be void for want of consideration. If, however, the right were doubtful, the promise might be supported by a compromise. Clark on Contracts, Sec. 360, and cases cited. There was no right whatever under the testimony on behalf of defendant below for the levy under a sham writ issued in a sham suit. If the jury had accepted the evidence of the witnesses for defendant upon these questions, with the attendant suspicious circumstances

of the failure to return the writ, or to file any undertaking, or to secure a record of a suit and its dismissal of record, under the issues there must have been a finding for the maker of the notes, the defendant below. There is no evidence showing or tending to show that Metcalf agreed to forbear any other suit or that the consideration for the execution of the notes was the settlement of Rastaetter's claim. The sole consideration was the dismissal of the suit by Metcalf and the release of the attachment. If these notes were obtained under the coercion of a pretended suit and a pretended levy, there was not only duress of goods, but a total failure of consideration. Thurman v. Burt, 53 Ill., 129; Spaids v. Barrett, 57 Ill., 289; Chandler v. Sanger, 141 Mass., 364; Collins v. Westbury, 2 Bay 211. In not submitting these disputed questions of fact to the jury by proper instructions, the trial court invaded the province of the jury, and the cause should be reversed on this ground.

3. But could either Metcalf or Schlichter, the sureties on the official bond, or both of them, have maintained an action in attachment against Rastaetter or his property? The petition filed in their suit is in the record, and so is the affidavit for attachment. These are verified by Metcalf. The former is a suit for money paid to the use of Rastaetter, and discloses that the debt is due from the sureties, and the affidavit in attachment contains all, or nearly all of the statutory grounds in attachments brought in an ordinary civil action where the debt is due. Under such a state of facts as pleaded by Metcalf himself, there was no right to attachment, for it plainly appears from these pleadings that neither he nor his co-surety had paid the debt, and thereby stood in the shoes of the school district creditor, to whose rights by such payment they would be subrogated. The provisions of our code of civil procedure applicable to their position before payment of the debt, are embodied in Sec. 3050 of the Revised Statutes: "A surety may "maintain an action against his principal to compel him to "discharge the debt or liability for which the surety is

"bound, after the same becomes due." This is but a statutory affirmance of the old doctrine in equity. Brannin v. Smith, 2 Disney (Ohio Supreme Court of Cincinnati), 436; Horst v. Dague, 34 O. S., 371; Barbour v. Nat'l Exch. Bank, 45 id., 133. If Metcalf or Schlichter or both of them had paid the amount of the bond to which they were sureties, then they would have been subrogated to the rights of the obligee of the bond, the school district, and then could have maintained an attachment like any ordinary creditor. Scott v. Doneghy, 17 B. Mon. (Ky.), 321, as appears in the opinion taken with the statement of the case. But neither of the sureties to Rastaetter's bond did this, and they could only proceed in the manner pointed out by statute, by bringing suit to compel their principal to discharge the debt after it was due, without the right to the ancillary process of attachment, or to pursue the following remedy provided for the relief of sureties before the debt becomes due, as follows: "A surety may maintain an "action against his principal to obtain indemnity against "the debt or liability for which he is bound before it is due "whenever any of the grounds exist upon which, by the "provisions of this title, an order may be made for arrest "or for an attachment. In such action the surety may "obtain any of the provisional remedies mentioned in "division six of this title, upon the grounds and in the "manner therein provided." Rev. Stat., Secs. 3051–52. The attachment thus allowed is upon an order of a court or judge thereof, upon an application therefor, showing the nature and amount of the plaintiff's claim, that it is just, when it will become due, and the existence of any of the grounds of attachment enumerated in such cases. Rev. Stat., Secs. 2912–18. No such application was made to any court or judge, and so the attachment proceedings were void for that omission, if the debt was not due. The plaintiffs in the attachment suit assert both in their petition and affidavit for attachment that the debt was due, but fail to show that they as sureties had paid the same before bringing the suit; it further appears from the allegation of

their petition in the attachment suit, that they had not in fact paid, and this is substantiated by the evidence in this cause. · In such case, no attachment lies on the ordinary grounds for an attachment for a past due debt. Their attachment proceedings could not be maintained, as, if the debt were not due, there are no grounds alleged in the affidavit of attachment therefor, and the writ was issued, if at all, by the clerk, and not by a court or judge thereof, who alone can issue the writ for a debt not due; and the debt was not due according to the showing of the plaintiffs. It is clear then, that from either situation, even if the attachment proceedings were regular, and the suit was actually commenced, as to which there is a conflict of testimony, which should have been decided by the jury under proper instructions from the court, that the plaintiffs had no right to an attachment, and that therefore there was no valid attachment to release and no suit to dismiss, and consequently no consideration whatever for the notes; for it is manifest from the record that the settlement was obtained under stress of the attachment proceedings and levy. There is no evidence showing, or tending to show, that the settlement was the forbearance of a future suit by attachment; and all the evidence points conclusively to the fact that the settlement was made in order to release the goods from the actual or threatened and not from any future levy. If Metcalf lost any rights to a future suit, he alone is to blame if he abused the process of the court, and this was a question of fact to be decided by the jury. The case is one of peculiar hardship. It may be possible to ruin a partnership business, or to make of small value the interest therein of an innocent partner, where the interest of the other co-partner in the business is attached. Such innocent partner may be compelled to await the sale of the real or supposed interest of the co-partner debtor, to be let into possessions of the goods with the purchaser at the sheriff's sale. Although this is the law, under the weight of authority it is a harsh remedy; and if the innocent partner is coerced into a settlement or the execution of

a bond to release the attachment, through trickery or deceit or any unfair dealing, he should be protected. The party to suffer is the one who has mistaken his remedy, or who has pretended to use the process of the court in sham proceedings under a sham suit, if that fact be established to the satisfaction of the jury. It is doubtful if the action for the use of the school district against Metcalf and Schlichter, the sureties to the official bond of Rastaetter, could have been maintained if the action had been properly defended, as the petition in that case discloses. The undertaking was executed to cover a portion of the term of the principal as treasurer of the school district, which extended from May, 1888, to May, 1889, the period of one year for which such officer is elected by the school board.

The obligation was executed January 3, 1889, and by its terms does not cover past transactions. Without any allegation in the petition of the school district to the effect that Rastaetter held over beyond the expiration of his term, it would probably be assumed that the bond was given to cover only a portion of his term, from January 3, 1889, until the succeeding month of May, when his term expired; yet the defalcations, or the larger part of them, charged in the petition occurred before the execution of the bond, and after the expiration of Rastaetter's term. However, I do not express any opinion on this point, although it seems to be directly in issue upon the pleadings.

For the reasons given, I think the motion for a re-hearing should be granted.