R. L. Weathersby v. Texas & Ohio Lumber Company.

No. 2425.   Decided December 15, 1915.

1.—Contract—Consideration—Delivery of Deed.

A corporation, to secure the delivery of a conveyance of land contracted for by a promoter before the corporate organization, assumed performance of the undertaing of such promoter to protect from liability on his note to another one who controlled the delivery of the deed, he being the owner of an option right to purchase from the grantor in such deed, and the promoter's undertaking so assumed being made in order to dispose of his option right. Held that the

delivery of the deed was a sufficient consideration for the contract of the corporation assuming such undertaking of its promoter.   (Pp. 478, 479.)

**2.—Corporation—Contract—President—Directors—Ratification.**

A contract by a corporation, made through its president who disclosed while so doing the fact that he was not authorized by the directors to make it, was nevertheless binding on the company when it received and retained land, the proceeds, with knowledge that it obtained title through such unauthorized contract of its president. It could not accept the benefits and reject the burdens of his undertaking, nor ratify his contract only in part.   (Pp. 479-481.)

**3.—Same—Ratification—Knowledge.**

Knowledge by a corporation of the terms of an unauthorized contract by its president whereby it obtained title to land on undertaking performance of various considerations, is shown by the fact that it spent large sums of money in complying with undertakings assumed in such unauthorized contract other than the one it now sought to repudiate.   (Pp. 481, 482.)

**4.—Same—Corporation—Knowledge of President.**

When a corporation seeks to repudiate an unauthorized contract made in its name by its president, it is taxed with his knowledge of the terms of the agreement so made in acting for it, and ratifies his contract if it retains the proceeds acquired thereby.   (P. 482.)

Error to the Court of Civil Appeals for the First District, in an appeal from Jasper County.

Weathersby intervened in a receivership of the Texas & Ohio Lumber Co. on a claim against that company. He was denied recovery, and the judgment was affirmed on his appeal. He then obtained writ of error.

*Crook, Lord, Lawhon & Ney,* for plaintiff in error.—The T. & O. Lumber Co. could not accept the benefits of the said contracts without assuming the burdens. McDonough v. Bank of Houston, 34 Texas, 307; Texas Western Ry. Co. v. Gentry, 69 Texas, 625; Ennis Cotton Oil Co. v. Burks, 39 S. W., 966; Weatherford, M. W. & N. W. R. Co. v. Granger, 22 S. W., 70; Cook on Corporations, pp. 1462-1514; 10 Cyc., 1078.

*W. W. Blake,* for defendant in error.—Defendant in error was not bound by the contract between Applegate and Kirby, the contract having been executed before the charter was granted, and before the corporation was organized, Applegate being a mere promoter, and Kirby being an outside third party. Laughlin could not, without notice to the corporation, and without being specially authorized by the company, ratify said unauthorized contract. Modern Dairy, etc., Co. v. Hauk S. Co., 116 S. W., 153; Ennis Cotton Co. v. Burks, 39 S. W., 966; Nicholstone C. Co. v. Smalley, 21 Texas Civ. App., 210, 51 S. W., 527; Meyer Bros. Drug Co. v. Tucker, 34 S. W., 786-7; Weatherford, M. W. & N. W. Ry. v. Granger, 86 Texas, 350, 24 S. W., 796; A. & E. Ency. Law, vol. 4, p. 201 (1st ed.).

A corporation is not responsible for the acts nor bound by the contracts of its promoters unless its charter so provides, or it expressly

ratifies such acts or contracts after incorporation. Railway Co. v. Granger, 86 Texas, 350; Bonding Co. v. Cator, 175 S. W., 1078; Exline-Reimers Co. v. Lone Star Life Ins. Co., 171 S. W., 1060; Bivins v. Panhandle Packing Co., 140 S. W., 523; Modern Dairy & Creamery Co. v. Blanke & Hauk Supply Co., 116 S. W., 153.

The unauthorized acts of a president of a corporation are not binding on the corporation, and it is not charged with notice of such acts. Fitzhugh v. Land Co., 81 Texas, 306; Franco-Texan Ld. Co. v. McCormick, 85 Texas, 416; M. K. & T. Ry. Co. v. Faulkner, 88 Texas, 649; Hurlbut v. Gainer, 103 S. W., 409.

*J. L. Peeler* and *Thelburt Martin,* in support of a motion for rehearing by defendant in error which was overruled.—This honorable court erred in holding that the defendant in error, having accepted the benefits under the contracts with plaintiff in error, made in April and September, 1906, was estopped from denying the validity or binding force of same and must carry out the terms thereof. Weatherford, M. W. & N. W. Ry. v. Granger, 86 Texas, 350; Railway Co. v. Gentry, 69 Texas, 625; Hays v. Heidelberg, 9 Pa. St., 203; Cincinnati v. Cameron, 33 Ohio St., 336; in re Dreuil & Co., 205 Fed., 573; Bigelow Estoppel (5 ed.), 686; 16 Cyc., 722-795; 10 Cyc., 1065; Thompson on Corporations, secs. 5257 and 5298.

Mr. Justice YANTIS delivered the opinion of the court.

R. L. Weathersby owned 80,000 shares of stock in the Jasper County Lumber Company, which was in the hands of a receiver. He was an endorser on two notes which it owed to W. W. Willson, in the aggregate sum of $3,503.96. He filed a plea of intervention in a receivership suit which was pending against the Texas & Ohio Lumber Co., in which he asked for judgment in his favor against the said Texas & Ohio Lumber Co. for the said sum, alleging that said company purchased from him an option which he owned to purchase from George N. Smalley, 3,743 acres of timber land in Jasper County, and that as a part consideration for the purchase of his said option said Texas & Ohio Lumber Co. agreed and contracted to protect him against the payment of said notes; and that when he caused the owner of said land, George N. Smalley, to deed it to the Texas & Ohio Lumber Co. it took said land charged with a lien in his favor to secure said protection; that he had been sued by said Willson on said notes, and a judgment had been rendered against him for the said amount, and that he had paid and discharged said judgment. In his plea of intervention he asked for judgment in his favor against the Texas & Ohio Lumber Co. in said amount, with interest thereon, and for a foreclosure of said lien on the said 3,743 acres of land.

The receiver answered said plea of intervention by denying any contractual relationship between the Texas & Ohio Lumber Co. and Weathersby. He alleged that the 3,743 acres of land was purchased by Ap-

plegate, and the deed was taken in his name as trustee for the Texas & Ohio Lumber Co.; that a cash payment was made by the promoters of the Texas & Ohio Lumber Co.; that the contract to hold the intervenor, Weathersby, harmless, by reason of his having to pay off the said notes, was signed without the authority of the board of directors of the Texas & Ohio Lumber Co., and without any knowledge on their part of the conditions of such contract.

The District Court rendered judgment against Weathersby. He appealed to the honorable Court of Civil Appeals for the First District, where the judgment of the trial court was affirmed. A writ of error was granted by this court upon the view that the Texas & Ohio Lumber Co. was bound by the contract of its promoters to protect Weathersby against liability on said notes. We will now consider this question, which is the only one presented for decision.

The undisputed evidence shows that in April, 1906, A. P. Laughlin, and several other parties, acting together, had in contemplation and were arranging for the organization of a lumber company corporation, which, when organized, would purchase timber lands to be used in the operation of the business of said corporation. The corporation was organized and chartered in June, 1906, and said Laughlin was elected its president, and H. D. Applegate was elected its vice-president. Prior to the actual organization of the corporation, among the lands Laughlin contemplated buying for the prospective corporation, was 3,743 acres of timber land in Jasper County, which was owned by one George N. Smalley. Laughlin engaged one H. D. Applegate, afterwards vice-president of the Texas & Ohio Lumber Co., as a promoter for the prospective company, and directed him to contract for the purchase of this tract of land for such company. However, he could not purchase the land direct from Smalley, as he ascertained, for the reason that Weathersby held a legal contract with said Smalley, which gave said Weathersby an option to purchase said land, and said option had not expired. So that Applegate and Laughlin ascertained that they could only secure said land by purchasing said option from Weathersby, or by contracting with him to waive said option in their favor. Accordingly, on April 25, 1906, said Applegate, the promoter of the prospective corporation, made a written contract with said Weathersby, through the latter's agent, John H. Kirby, by the terms of which Weathersby agreed to release his option on the land in their favor, and that Smalley should convey the land direct to said Applegate as trustee for his said associates and the prospective corporation. In this contract the consideration moving to Weathersby was the purchase from him by Applegate and his associates of 80,000 shares of the capital stock of the Jasper County Lumber Co., which said Weathersby owned, at its par value of $8,000, which was to be paid in cash; and further, that said Weathersby would be protected by said Applegate and said prospective corporation against loss as an endorser or guarantor upon any of the promissory notes, accounts or obligations of the Jasper County Lumber Co., which was in

the hands of a receiver. In obedience to said contract said Weathersby did procure said George N. Smalley to convey by deed said land to said Applegate, which deed was executed, but not delivered, on June 8, 1906, but was delivered after the execution of the contract of September 18, 1906, which was of the following nature. It was executed by the Texas & Ohio Lumber Co., by A. P. Laughlin, president. It was also signed by H. D. Applegate and A. P. Laughlin individually. By its terms it confirmed said contract of April 25, 1906, which was made by said Applegate and said Kirby, as agent for Weathersby. Said new contract of September 18, recited that the one of April 25 had been made, and named the consideration which was to be received by Weathersby as stated above, and recited that through said contract of April 25 Weathersby had promised to deliver a deed to said land to the Texas & Ohio Lumber Co., and that said lumber company was now desirous of having said deed from Smalley, the owner of said land, delivered to it, and it then in said September contract agreed to pay to Weathersby all the considerations recited in said April contract, including the protection of Weathersby against paying the said notes, said September contract reciting a lien on said land to secure Weathersby against liability on said notes.

This contract of the Texas & Ohio Lumber Company of September 18 was made long subsequent to the organization of the corporation, whose charter was secured in June, 1906, and when said contract was made Laughlin and Applegate were its duly elected and acting president and vice-president, respectively.

The deed to the Smalley land at the date of the execution of the said September contract had not been delivered to Applegate by Weathersby, or his agent, Kirby, who had refused to deliver it until such time as the Texas & Ohio Lumber Co. itself would become responsible to Weathersby for the considerations mentioned. After the execution of this September contract Kirby delivered the deed to Applegate, ·and thereafter Applegate conveyed the land to the Texas & Ohio Lumber Co.

There is no merit in the contention made by the Texas & Ohio Lumber Co., defendant in error, or its receiver, that there was no consideration for the September contract. The consideration was plainly expressed therein. It stated, in substance, that in order to secure the deed to the said land the Texas & Ohio Lumber Co. agreed to pay to Weathersby, the plaintiff in error, the considerations mentioned and promised in the April contract, expressly agreeing to protect him against liability on the notes referred to, which were the foundation of the judgment secured against Weathersby, on account of which the latter sues herein. When the deed was delivered to Applegate the $8,000 cash consideration was paid to Weathersby, and only that portion of the consideration mentioned in said contracts which provided protection to Weathersby against the payment of said notes was left outstanding, and this was assumed to be cared for by the Texas & Ohio Lumber Co. This was ample consideration to support the contract; and as soon as it was

agreed by the Texas & Ohio Lumber Co. to pay said considerations, Kirby, the agent for Weathersby, delivered the deed to Applegate, the promoter, who then conveyed the land to the Texas & Ohio Lumber Co., in accordance with the general understanding, when each of said contracts was executed.

It is contended, however, that the Texas & Ohio Lumber Co. was not bound on said contract of September 18, because it is denied that Laughlin, its president, had authority from the board of directors to execute it. It is true the evidence shows that Laughlin had not been authorized by the board of directors to make this contract, and we will consider the question whether the Texas & Ohio Lumber Co. is bound by its provisions from that viewpoint. That is, that Laughlin, when he executed said contract exceeded his authority as president of the corporation. We will assume also that he did not act within the apparent scope of his authority, because there is evidence in the record that when he signed said September contract as president of the Texas & Ohio Lumber Co. he stated to the interested parties that the board of directors had not authorized him to make the contract. But there still remains the fact that the Texas & Ohio Lumber Co. took and retained the land under his contract and the April contract made for its benefit by its promoters, and that it is still holding and claiming said land which was acquired through the provisions of said contract without offering in this suit to surrender said land. We do not think there can be any sound reason for sustaining the position thus occupied by it, which, in effect, would mean that it could receive the benefits of these contracts made by its promoters for it and at the same time refuse the burdens imposed upon it by the contract. The title to this land it acquired through the provisions of said contracts, and it is by the force of the provisions contained in said contract that it still holds and claims the land. Under such circumstances equity would not allow it to refuse to pay the consideration promised by its promoters in said contract, for in good conscience it should not be permitted to keep the lands and at the same time refuse to pay for them. When the Texas & Ohio Lumber Co. asserts title to said lands it affirms the validity of said contract through whose provisions they secured said title. It can not affirm the contract in part and repudiate it in part. It can not accept its benefits and reject the burdens; and having affirmed the portion of the contract favorable to it, which it did in accepting and holding the lands, equity estops it from denying any portion of the contract, and especially that portion which provides for the consideration to be paid to Weathersby for securing the title thereto.

The question involved is not a new one. It has been directly passed upon by this court in the case of Weatherford, M. W. & N. W. Ry. v. Granger, 86 Texas, 350, 40 Am. St., 837, 24 S. W., 795. Judge Gaines, then associate justice, gave careful and exhaustive consideration to the identical question involved here. In that case he said:

"It is also generally held that contracts by promoters, made on behalf

of the corporation within the scope of its general authority, may be adopted by the latter after its organization. Some of the courts say they may be ratified, but ratification presupposes a principal existing at the time of the agent's action, and it seems to us, therefore, that the term is not applicable in its technical sense. McArthur v. Printing Co. (Minn.), 51 N. W., 216; Spiller v. Skating Rink Co., 7 Ch. Div., 368. With the exception of the law courts of England, the rule is also very generally recognized that if a contract be made on behalf of a corporation by its promoters, and the corporation, after its organization, with a knowledge of the facts, accepts its benefits, it must take it with its burdens; and, if the other party has performed the stipulation binding upon him, it may be enforced as against the corporation."

"    . . . Where the promoters of a railway company have agreed with a landed proprietor, through whose estates the road is projected to run, to take the requisite quantity of his land at a stipulated price, and after the corporation is formed it takes the land, it is certainly equitable that the company should be made to pay the agreed compensation; and the doctrine is recognized in many English equity cases."

"    . . . Having exercised rights and enjoyed benefits secured to it by the terms of a contract made by its promoters in its behalf, a corporation should be held estopped to deny its validity. Again, where the promoters of a corporation have made a contract in its behalf, to be performed after it is organized, it may be deemed a continuing offer on part of the other party to the agreement, unless withdrawn by him, and may be accepted and adopted by the corporation after such organization; and the exercise of any right inconsistent with the non-existence of such contract ought to be deemed conclusive evidence of such adoption."

In the case of Texas Western Railway Co. v. Mary F. Gentry, 69 Texas, 632-3, 8 S. W., 98, Judge Gaines again gave consideration to this question, and the following excerpt from his said opinion is directly decisive thereof. He says:

"But it is further insisted that the resolution, as a contract to issue bonds secured by a mortgage, was void, because it was never authorized or ratified by a two-thirds vote of the stock of the corporation, as required by our statute (Rev. Stats., art. 4220). There is some conflict among the authorities upon the question of the validity of the contract of a corporation, when made in excess of its powers. When the contract is executed and the corporation has received the benefit the weight of authority seems to be that the corporation should be held estopped to deny its authority to make it. (Jones v. Guaranty Co., 101 United States, 622; National Bank v. Matthews, 98 United States, 621; Railway Co. v. McCarthy, 96 Otto, 258; Whitney Arms Co. v. Barlow, 63 New York, 62; Perkins v. Railroad Co., 47 Maine, 573; Ossippee, etc., Manufacturing Co. v. Conney, 58 New Hampshire, 295; Rutland,

etc., Railroad Co. v. Proctor, 29 Vermont, 93; Monument National Bank v. Globe Works, 101 Massachusetts, 57; Attleborough National Bank v. Rogers, 125 Massachusetts, 339; Oil Creek Railroad Co. v. Pennsylvania Transportation Co., 83 Pennsylvania State, 160; Bank v. Hammond, 1 Richmond Law, 281; City Fire Insurance Co. v. Canugi, 41 Georgia, 660; Southern Life Insurance Co. v. Lanier, 5 Florida, 110; Littlewort v. Davis, 50 Massachusetts, 403; Underwood v. Newport Lyceum, 5 B. Monroe, 129; Hays v. Galion, etc., Gas Co., 29 Ohio, 330; State Board v. Citizens Street Railroad Co., 47 Indiana, 407; Durst v. Gale, 83 Illinois, 136; Thompson v. Lambert, 44 Iowa, 239; Foulke v. San Diego, etc., Railroad Co., 51 California, 356.)    The rule is correctly stated in a recent work on estoppel: 'When a contract has in good faith been fully performed and nothing remains to be done by  .  .  .  the party seeking relief, and all the shareholders have acquiesced in its performance, the plea of *ultra vires* or mere want of power is not, available by the corporation in an action brought against it for not performing its portion of the contract.    (2 Herman on Estoppel and Res Judicata, section 1179 and the numerous cases there cited.) There are some decisions which hold that a contract by a corporation *ultra vires* is wholly void and can not be enforced, either by or against it.    But if the contract be within the general scope of the corporate authority and the prohibition be merely against the mode of its execution it is valid as against the corporation which has received its benefits in favor of a party who has fully complied with the obligations on his part.    In the case before us the railroad company had power to make a mortgage, but the statute provides it must be authorized by a vote in meeting of two-thirds in value of the stockholders.    This provision is evidently for the protection of the latter.    It seems from the evidence in this case that the defendant corporation was organized for the purpose of extending and operating the railroad acquired, or then about to be acquired by Gentry.    It is fully shown that it made the purchase, promised the bonds and mortgage as a part of the consideration for the property and had operated the road for about three years when this suit was brought.    It does not appear that it ever had any other assets save the property so acquired and a short extension of the line.    Under these circumstances the corporation must be held estopped to deny the want of assent of its shareholders.    The promise to make a mortgage under these circumstances is deemed in equity equivalent to a mortgage as between the original parties to the transaction.  .  .  .' "

It is contended that the Texas & Ohio Lumber Co. had no notice of the terms of the contracts of April 25 and September 18, and that for this reason said company would not be bound by the provisions of said contracts, or estopped from holding the land without paying all of the consideration to Weathersby provided in said contracts. · But we think the undisputed evidence shows that the Texas & Ohio Lumber Co. did have such notice, both actual and constructive.    After its in-

corporation it complied with every provision in the contracts except the one which exacted of it to hold Weathersby harmless on these two notes. It paid the cash consideration of $8,000 for the stock which Weathersby owned in the Jasper County Lumber Co. This was one of the provisions in the contract. It paid the note of Heiseg & Norvell, which was one of the provisions mentioned in the contract. It accepted the deed from Weathersby, which was one of the provisions in the contract. It is inconceivable that the company would have voluntarily paid out such large sums of money to comply with some of the provisions of the contract without ascertaining all of the provisions of the contract, for certainly they would not have undertaken to comply with any of the provisions in the contract without intending to comply with all its provisions, for it knew that it could not secure the benefits to itself which it desired, namely, the deed, unless it complied with the entire contract. It knew that to comply with some of the provisions would not entitle it to the deed. In addition to this the undisputed evidence shows that Laughlin, the president of the Texas & Ohio Lumber Co., had actual knowledge of all of the provisions of the contract of April 25, and of the contract of September 18, because he directed Applegate to make the former, and had in person made and executed the latter, and must have been familiar with its contents. In each instance he acquired notice and information of all of the provisions in said contract while engaged in furthering the business of the Texas & Ohio Lumber Co., in the first instance before the company was organized, and in the latter instance several months after it was chartered, and while he was its acting president. Having acquired such notice and information while attending to business for the benefit of the Texas & Ohio Lumber Co., the notice he had as its president was imputed to the said company. If he had acquired this notice while acting for himself in his own private business affairs it would not be imputed to the Texas & Ohio Lumber Co.; but since he acquired the notice while transacting business for the Lumber Company, such notice was, in law, imputed to the company. Teagarden v. Godley Lumber Co., 105 Texas, 616, 154 S. W., 973.

We conclude that the judgment of the Court of Civil Appeals, and of the District Court, should be reversed and judgment should be here rendered in favor of plaintiff in error, R. L. Weathersby, in the sum of $3,503.96, with interest thereon at the rate of eight per cent per annum from and after the 17th day of May, 1907, together with all costs incurred by him in the District Court, as well as in the Court of Civil Appeals, and in this court, and that he have a foreclosure of his said lien upon said 3,743 acres of land in Jasper County, Texas, covering the full amount of said indebtedness; and it is accordingly so ordered.

*Reversed and rendered.*