CATOR v. COMMONWEALTH BONDING &
CASUALTY INS. CO. (No. 80–2865.)

(Commission of Appeals of Texas, Section A.
Nov. 12, 1919.)

1. CORPORATIONS ⟐80(10) — WAIVER OF
RIGHT TO CANCEL SUBSCRIPTION CONTRACT
BY TRANSFER OF STOCK.

Though the organization of a corporation
under the laws of Arizona, instead of under the
laws of Texas, as provided in a stockholder's
contract, was a departure from the terms of the
contract sufficient to warrant its cancellation at
the suit of the stockholder, the transfer of his
stock after he had acquired knowledge of such
departure was a waiver by him of his right of
cancellation on such ground.

2. CORPORATIONS ⟐80(2) — CHARGEABLE
WITH FRAUD OF AGENTS IN PROCURING SUB-
SCRIPTIONS.

A corporation is chargeable with the fraud-
ulent representations of its agents made for
the purpose of procuring subscriptions, the rule
applying to subscription contracts entered into
between the subscriber and promoter prior to
incorporation, when such contracts have been
adopted by the corporation.

3. CORPORATIONS ⟐79—NO ENFORCEMENT OF
PROMOTER'S CONTRACT PRIOR TO ADOPTION.

A contract by a promoter in which he at-
tempts to bind the future corporation, without
a present existence, and to create a liability
against it, cannot be enforced against the cor-
poration unless and until adopted by it.

4. CORPORATIONS ⟐30(1)—FIDUCIARY RELA-
TION BETWEEN PROMOTER, COMPANY, AND
STOCKHOLDERS.

The promoter of a corporation to be formed
stands in a fiduciary relation toward it, and to
the subscribers to its stock.

5. CORPORATIONS ⟐80(2) — LIABILITY FOR
FRAUD OF PROMOTING COMPANY.

Where one company acted as promoter of
another, and procured by misrepresentations a
subscription to the latter's stock, as between the
promoting company and the subscriber the fraud
of the company was ground for rescission, and
the organized company for whose benefit the
subscription contract to its stock was made
through its acceptance or adoption acquired no
higher right than that of the promoting com-
pany.

6. CORPORATIONS ⟐80(2) — RESPONSIBILITY
FOR FRAUDULENT REPRESENTATIONS INDUC-
ING STOCK SUBSCRIPTION.

A company accepting a subscription to its
capital stock, procured by one technically not
its agent through fraudulent misrepresentations
made without such authority, not only adopts the
act of such a one in receiving the subscription,
but also impliedly adopts and becomes responsi-
ble for any fraudulent representations made to
induce the subscription, whether or not it is
without knowledge or notice of the fraud, and
cannot defend the stockholder's suit for rescis-
sion.

7. CORPORATIONS ⟐80(10)—NO WAIVER OF
RIGHT TO RESCIND SUBSCRIPTION IN ABSENCE
OF KNOWLEDGE OF FRAUD.

Where a stockholder, induced to subscribe
by fraudulent misrepresentations of the promot-
er, had no knowledge of the fraud when he
transferred his stock, he did not thereby waive
his right to rescind his subscription.

8. CONTRACTS ⟐265—PLACING OTHER PARTY
IN STATU QUO ON RESCISSION.

The rule that one who seeks rescission of a
contract for fraud must be able to place the
other party in statu quo only requires that the
other shall be placed in substantially his origi-
nal situation, and that the rescinding party
shall derive no unconscionable advantage from
his conduct.

9. CORPORATIONS ⟐83—CANCELLATION OF
SUBSCRIPTION; JUDGMENT PROTECTING COM-
PANY IN SUIT TO CANCEL STOCK SUBSCRIP-
TION.

In suit to rescind a stock subscription, where
the company to which plaintiff had assigned his
certificate was made a party defendant, judg-
ment ordering surrender of the certificate for
cancellation *held* effectually to protect the main
defendant, the company whose stock was sought
to be canceled, being tantamount to a tender
and return by plaintiff of the certificate.

10. CORPORATIONS ⟐80(12)—NO RECOVERY
FROM COMPANY OF AMOUNT PAID PROMOTER
ON RESCISSION OF SUBSCRIPTION.

Where a contract to subscribe to corporate
stock stipulated that an amount was paid the
promoters in consideration of their agreement
to organize and incorporate the company free
from expense to stockholders, and none of the
amount was paid or received by the company,
on rescinding his subscription for misrepresen-
tations a stockholder was not entitled to recover
the amount from the organized company.

Error to Court of Civil Appeals of Seventh
Supreme Judicial District.

Suit by L. S. Cator against the Common-
wealth Bonding & Casualty Insurance Com-
pany. From judgment for plaintiff, defend-
ant appealed to the Court of Civil Appeals,
which reversed and remanded (175 S. W.
1074), and plaintiff brings error. Judgment
of the Court of Civil Appeals reversed, and
judgment of the trial court reformed, and as
reformed affirmed on recommendation of the
Commission of Appeals.

J. A. Stephens, of Benjamin, H. E. Hoover,
of Canadian, and Chas. L. Black, of Austin,
for plaintiff in error.

F. H. Haddix, of Los Angeles, Cal., and
Lumpkin & Harrington, of Amarillo, for de-
fendant in error.

SONFIELD, P. J. Suit by plaintiff in er-
ror to cancel a subscription to the capital
stock of the Commonwealth Bonding & Casu-
alty Insurance Company, to recover $625, the
amount of cash paid on such subscription,
and the cancellation of a note in the sum of

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

$4,375, and a deed in trust on certain lands in Hansford county, executed under the terms of the subscription contract. Trial to the court resulted in a judgment in favor of plaintiff in error, canceling the subscription contract, the note and deed in trust, and decreeing the recovery of the $625. The Court of Civil Appeals reversed the judgment of the district court, and remanded the cause. 175 S. W. 1074.

Plaintiff in error entered into a written contract of subscription to the capital stock of the Commonwealth Bonding & Casualty Insurance Company, a corporation in process of organization. The contract was entered into with the Commonwealth Organization Company, promoters of the proposed corporation. For convenience, the corporation will be referred to as "Commonwealth Company" and the promoting company as "Organization Company." The contract of subscription provided that the corporation should be organized under the laws of Texas, with an authorized capital stock of $300,000, and a paid-up capital of at least $200,000, free from organization expenses. The subscription was for 125 shares of the par value of $10 each, plaintiff in error agreeing to pay therefor the sum of $5,000, $4,375 to be paid in money or securities, at any time after June 1, 1911, upon receipt of notice that a certain amount of capital stock had been subscribed in good faith; the sum of $625, to be paid concurrently with the execution of the contract, to the Organization Company in consideration of the agreement to organize a corporation, and in lieu of any further or other contribution to the expense of organizing and incorporating the company. The contract was dated the 12th day of December, 1910. Upon its execution plaintiff in error executed and delivered to C. S. McDonald, who represented the Organization Company, his note in the sum of $625, payable to the order of McDonald, which note plaintiff in error alleged was afterwards delivered to the Organization Company, and has been fully paid by him. Thereafter plaintiff in error executed to the Commonwealth Company his note in the sum of $4,375 and a deed in trust to certain lands in Hansford county to secure same. The corporation was, in fact, organized under the laws of Arizona.

It was alleged, and the evidence established, that McDonald represented, among other things, that at the time of the execution of the contract $200,000 of the stock of the proposed corporation had been fully paid in cash free of all expenses; that the representation was fraudulently made, was material, and was relied upon by plaintiff in error; that the cash or paid-up capital did not at any time exceed the sum of $16,000. It was further alleged and established that the stock was worthless, and had not then and had never had a market value.

The Commonwealth Company answered that plaintiff in error had participated, by proxy, in a meeting of the stockholders, in which it was determined that incorporation should be under the laws of Arizona; that after plaintiff in error had knowledge that the corporation had been so organized he transferred his certificates of stock to the Bankers' Guaranty Company, and thereby plaintiff in error was estopped to seek cancellation on the ground of breach of contract in this particular; and that by reason of the transfer of his stock he was in no position to return the same and restore the parties to their original status; and for this reason he should be denied cancellation on any ground alleged.

The Bankers' Guaranty Company, hereinafter referred to as the "Bankers' Company," was a party defendant to the suit, and filed its answer, admitting that plaintiff in error had transferred to it his certificate of stock; that it was then, and had been at all times, ready to surrender the stock and disclaimed any interest therein; that the transfer of the stock by plaintiff in error was for the sole purpose of enabling the Bankers' Company to carry out the purposes for which the Commonwealth Company had been incorporated. The judgment of the district court recites that the certificate of stock is in possession of the Bankers' Company, and orders the Bankers' Company to deliver it up for cancellation.

[1] We concur in the holding of the Court of Civil Appeals that, while the organization of the corporation under the laws of Arizona, instead of under the laws of the state of Texas, as provided in the contract, was, under the evidence, a departure from the terms of the contract, sufficient to warrant cancellation, the transfer of his stock by plaintiff in error, after he had acquired knowledge of such departure, was a waiver of the right of cancellation on this ground.

The Court of Civil Appeals held the representation that $200,000 of the capital stock of the proposed corporation had been paid in in cash prior to the execution of the subscription contract, both fraudulent and material. The undisputed evidence establishes that the representation was relied upon by plaintiff in error, who was thereby induced to enter upon the contract. Relief was denied him because the evidence did not disclose notice to the corporation of the fraudulent representation at the time of its adoption of the contract; and on the further ground that he, having transferred his stock to the Bankers' Company, was in no position to restore the status quo.

[2] The authorities agree that a corporation is chargeable with the fraudulent representations of its agents made for the purpose of procuring subscriptions. "The well-established rule now is that a corporation

cannot claim or retain the benefit of a subscription which has been obtained through the fraud of its agents. The misrepresentations are not regarded as having actually been made by the corporation, but the corporation, is not allowed to retain the benefit of the contract growing out of them, being liable to the extent that it has profited by such misrepresentations. The question of the authority of the agent taking the subscription is immaterial herein. It matters not whether he had any authority, or exceeded his authority, or concealed its limitations. The corporation cannot claim the benefits of his fraud without assuming also the representations which procured those benefits." 1 Cook, Corp. (7th Ed.) § 140.

We are of opinion that the same rule should apply to subscription contracts entered into between the subscriber and promoter prior to incorporation when such subscription contracts have been adopted by the corporation.

It has been held broadly that fraudulent representations made by a promoter prior to the organization of the corporation, in order to induce subscriptions, do not give ground for rescission. This holding is based upon the proposition that a promoter is not the agent of the corporation.

A promoter's relation to the future corporation is unique. There are not wanting authorities declaring him an agent of the proposed corporation. Thus in Dickerman v. Northern Trust Co., 176 U. S. 181, 20 Sup. Ct. 311, 44 L. Ed. 423, it is said:

"The promoter is the agent of the corporation and subject to the disabilities of an ordinary agent."

This language is quoted with approval in Fred Macey Co. v. Macey, 143 Mich. 138, 106 N. W. 722, 5 L. R. A. (N. S.) 1036.

[3] This is hardly an accurate statement. An agency implies the existence of a principal, and a delegation of authority from the principal to the agent. A nonexistent corporation can have no agent. Railway Co. v. Granger, 86 Tex. 350, 24 S. W. 795, 40 Am. St. Rep. 837. It follows, therefore, that a contract by a promoter in which he undertakes to bind the future corporation and create a liability against it cannot be enforced against the corporation unless and until adopted by it. Railway v. Granger, supra; Weathersby v. Lumber Co., 107 Tex. 474, 180 S. W. 735.

[4] Though the promoter cannot, strictly speaking, be regarded as an agent, his relation to the future corporation and to the subscribers is of a fiduciary character. He is an intermediary between the corporation and the subscribers, future members, who in the aggregate will form the corporation. His relation to the corporation is analogous to that of an agent to his principal, and the rules governing the relation of principal and agent have been extended to apply to that of the promoter to the corporation. Under all the authorities, he is held accountable to the corporation in like manner as though the relation of principal and agent, in fact, existed.

Contracts of subscription, prior to incorporation, differ in some respects from ordinary contracts, and are not governed entirely by the general principles of the law of contracts. They also have elements differentiating them from other contracts of promoters. Strictly speaking, there can be no subscription to the capital stock of a corporation prior to incorporation, because, until organized, there is no capital stock. Technically and without reference to statutory provisions, they are contracts to subscribe rather than contracts of subscription. Various theories of liability under, and enforcement of, such subscription contracts have been advanced by the courts, a statement or discussion of which is not deemed necessary.

We are impressed with the correctness of the statement in 1 Machen, Corp. § 257, as follows:

"Upon whatever theory subscriptions to the capital of a projected company are to be enforced—whether because of adoption or acceptance by the company after its incorporation, or because they are deemed binding in the first instance—they are, nevertheless, subject to rescission for fraud or misrepresentation of the promoters to the same extent as if the company had been already incorporated."

If the subscription be regarded as a continuing offer binding only upon its acceptance by the corporation, the offer being induced through fraudulent representations, such acceptance or adoption, there being no other or new consideration, does not relieve it from the taint of fraud and make it invulnerable to attack on that ground. It stands on a parity with any other contract having its inception in fraud, and in the absence of intervening rights is voidable at the instance of the party thus induced to make the offer.

[5] If the subscription be regarded as a present, binding contract, made for the benefit of the future corporation and enforceable by it upon organization, the rule that the rights of the person for whose benefit a contract is made are subject to the equities growing out of the contract between the original parties applies. 13 C. J. p. 610. As between the Organization Company and plaintiff in error, parties to the contract, there can be no question that the fraudulent representations by the agent of the Organization Company inducing the contract would be available as a ground for rescission. The corporation for whose benefit the contract was made, through its acceptance or adop-

tion, acquired no higher or better right than the Organization Company.

[6] The corporation accepting a subscription to its capital stock procured by one technically not its agent, through fraudulent misrepresentations made without its authority, not only adopts· the act of such a one in receiving the subscription, but also impliedly adopts and becomes responsible for any false and fraudulent representations which may have been made to induce the subscription. 2 Clark & Marshall Private Corporations,‑ 1463. That the corporation was without knowledge or notice of the fraud is immaterial. No liability is sought to be imposed upon the corporation. Plaintiff in error seeks only to be relieved from liability under a contract having its inception in fraud. He seeks to prevent the corporation from deriving any benefit under such contract. Relief is granted, not because of the culpability of the corporation, nor· because it was guilty of any wrong in the premises, but only on the ground that it can derive no benefit or profit from the contract thus procured.

The corporation in adopting the contract takes it subject to all defenses and any right of rescission which might exist in favor of plaintiff in error as against the Organization Company, with whom the contract was made. It cannot claim the benefits of the promoter's fraud in procuring the subscription, without assuming also the representations through which the benefits were procured.

[7] The remaining question is: Did plaintiff in error waive his right of rescission on this ground through the transfer of his stock to the Bankers' Company?

In order to a waiver of the right of rescission, there must be knowledge of the fraud. The undisputed evidence establishes that at the time of the transfer of his certificate of stock by plaintiff in error he had no knowledge of the falsity of the representation.

The evidence establishes that the stock was worthless, and has not, and never had, a market value. There are authorities to the effect that this obviates the necessity of the return, or offer to return, of the stock certificate. 1 Thompson, Corporations (2d Ed.) § 742; 2 Fletcher, Corporations, § 631. In the view we take of this question, it is not necessary to determine this proposition.

[8] The rule that one who seeks rescission must be able to place the party in statu quo only requires that the party shall be placed in substantially his original situation, and that the other shall derive no unconscionable advantage from his conduct. Basye v. Paola Refining Co., 79 Kan. 755, 101 Pac. 658, 25 L. R. A. (N. S.) 1302, 131 Am. St. 'Rep. 346.

[9] The Bankers' Company was a party defendant to the suit. In its answer it disclaimed any interest in the stock, and offered to surrender the certificate. The uncontroverted evidence is, and the judgment so states, that the stock certificate was in possession of the Bankers' Company, and the judgment ordered its surrender for cancellation. There was no appeal from the judgment by the Bankers' Company, nor did defendant in error complain of the court's judgment in this particular. There is nothing in the record to indicate that the Bankers' Company has not complied with the terms of the judgment rendered against it, from which it has not appealed. The judgment, in our opinion, effectually protects the Commonwealth Company, and is tantamount to a tender and return by plaintiff in error of the stock certificate.

[10] Under the judgment of the district court, plaintiff in error was decreed a recovery of the sum of $625, the amount paid by him at the date of the execution of the contract, together with interest.

As stated by the Court of Civil Appeals, the subscription contract expressly stipulates that the $625 is paid to the promoters in consideration of their agreement to organize and incorporate the company free of expense to the stockholders; and the testimony shows that none of this amount was ever paid to or received by the Commonwealth Company. Plaintiff in error was therefore not ·entitled to a recovery of this sum from the Commonwealth Company.

We are of opinion that the judgment of the Court of Civil Appeals should be reversed, and the judgment of the district court reformed so as to exclude a recovery of the sum of $625, with interest, and, as so reformed, affirmed.

PHILLIPS, C. J. The judgment recommended by The Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.