**271 P.2d 444**

**ALBANO et al.**

v.

**MOTOR CENTER OF POCATELLO,**
Inc., et al.

No. 8042.

Supreme Court of Idaho.

June 23, 1954.

Anderson & Anderson, Pocatello, for respondents.

H. William Furchner, Blackfoot, for appellants.

B. W. Davis, O. R. Baum, Ruby Y. Brown and M. R. Whittier, Pocatello, amici curiae.

On Petition for Rehearing.

THOMAS, Justice.

Plaintiffs, hereinafter referred to as respondents, brought an action to recover $614.17 for goods, wares and merchandise sold and delivered to Motor Center of Pocatello, Inc., hereinafter referred to as vendor, and from Motor Center of Pocatello, Incorporated, hereinafter referred to as vendee.

The vendee bargained for the purchase in bulk of the stock of merchandise, fixtures, equipment and supplies of the vendor otherwise than in the regular course of business for $33,500. Insofar as the record before this court is concerned the purchase price is conceded to be the reasonable value of the property transferred under the contract.

It is alleged in the complaint that the parties to the transaction failed to comply with the Bulk Sales Law of Idaho, I.C. § 64–701 et seq. and that such sale was fraudulent and void and that both vendor and vendee were personally liable to respondents as creditors of the vendor for their proportionate share of the purchase price.

Upon issues joined the matter was tried before a jury.

The vendor confessed judgment which was directed by the court. The jury returned a verdict for respondents against the vendee and judgment was entered. From the judgment against vendee, it has prosecuted this appeal. Vendor did not appeal.

The contract of sale was made in writing on September 23, 1952. At the same time the vendor furnished vendee a sworn statement in writing, purportedly setting forth the names and addresses of all of its creditors including respondents, together with the amount of indebtedness due or owing or to become due or owing by vendor to each of said creditors. All such creditors so listed were notified in writing, by registered mail, more than five days prior to the date set for completing the sale, that the sale would be consummated on October 2, 1952, in conformance with the provisions of sec. 64–702, I.C. The purchase price was ample to pay each listed creditor in full.

Prior to the date set for the consummation of the sale the vendee, appellant herein, received notice of the claims of many additional creditors of the vendor who were not listed in the verified list and also further claims of some of the listed creditors. The aggregate amount of the listed and unlisted claims substantially exceeded the purchase price.

Thereupon and prior to October 2, 1952, vendee, being in no position to determine the bona fides of the claims of the creditors who were not listed and the claims of some listed creditors for sums in excess of that shown on the sworn statement, paid the entire purchase price to N. A. Jordan, its secretary, as escrow holder, by depositing

the purchase price to his account in a Pocatello bank for the benefit of the bona fide creditors of the vendor.

N. A. Jordan, allegedly being unable to ascertain the respective rights of the claimed creditors, filed suit in the District Court of the Fifth Judicial District, Bannock County, Idaho, purportedly making all the alleged creditors, the vendor and the vendee parties, and sought a determination of the bona fides of all those who claimed to be creditors.

In the meantime the escrow holder paid in full one of the listed creditors whose claim represented in excess of one-half of the total purchase price. This creditor held a purportedly valid mortgage on a substantial portion of the machinery and equipment and had threatened to initiate an action to foreclose its lien.

On the day following the filing of such action by the escrow holder, respondents filed this action.

Except for the sum paid to the one purportedly secured creditor the balance of the purchase price remains on deposit in the escrow account.

Numerous errors have been assigned; however the controlling issues for determination revolve around certain contentions urged by respondents with reference to the matter of the failure to comply with the provisions of the Bulk Sales Law.

The pertinent statute, sec. 64–702, I.C., provides as follows:

"Liability of vendee.—Whenever any person shall bargain for the purchase in bulk of any portion of a stock of merchandise or fixtures otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business or an entire stock of merchandise in bulk or the property, furniture, fixtures, equipment or supplies of a hotel or restaurant, barber shop or other place of business wherein the furniture, fixtures, and equipment are used in carrying on said business, otherwise than in the regular course of trade, for cash or on credit, and shall pay any part of the price, or execute and deliver to the vendor thereof, or his agent, or to any person for his use, any promissory note or other evidence of indebtedness, or give credit, whether or not evidenced by promissory note or other evidence of indebtedness, for said purchase-price or any part thereof, without at least five days previously thereto having demanded of and received from said vendor or from his agent the statement provided for in section 64–701 and verified as therein provided, and without notifying also at least five days previously thereto, personally or by registered mail, every creditor as shown upon said verified statement of said proposed sale or transfer, with the price thereof, the person to whom said sale or transfer is made, and the time and conditions of

payment, and without paying or seeing to it that the purchase-money of the said property is applied to the payment of the bona fide claims of the creditors of the vendor as shown upon said verified statement, share and share alike, unless otherwise provided for by the statutes designating priority of payments, such sale or transfer shall be fraudulent and void, and said vendee shall be personally liable to any creditor or to all creditors of said vendor for their proportionate share of the purchase-price of said business, whether the same has been paid by vendee to vendor or not."

It is urged that no corporate entity was in existence at the time of the execution of the purported contract of sale and hence there was no purchaser. The contract was made and the notice to the creditors given for and on behalf of the corporation prior to the completion of the corporate organization; subsequently the corporate organization was completed and of course the corporation made a party defendant by the respondents who seek now to hold it responsible.

■ Generally, if promoters of a corporation in contemplation of its organization enter into a contract for and on behalf of the corporation which was intended for its benefit and the contract is adopted, accepted, confirmed and ratified by the corporation when organized, such corporation is then liable, both in law and in equity, to perform the obligations imposed thereby. Hackbarth v. Wilson Lumber Co., 36 Idaho 628, 212 P. 969; Henry Gold Mining Co. v. Henry, 25 Idaho 333, 137 P. 523; Mantle v. Jack Waite Mining Co., Ltd., 24 Idaho 613, 135 P. 854, 136 P. 1130. See also Fletcher Cyclopedia Corporations, Permanent Edition, Vol. 1, sec. 207, p. 681 and sec. 211, pp. 701-2.

It is also contended that under the Bulk Sales Law the vendee was only obligated to notify the creditors who were listed and to pay or to see that the purchase price is paid to the bona fide creditors whose claims were set forth on the list and no others; that when the vendee has done this he has complied with the law; that a failure to do this, even though the vendee has notice or knowledge of others who claim to be creditors, constitutes non-compliance with the statute and makes the sale or transfer fraudulent and void and the vendee personally liable to any creditors of the vendor whose names are on the list for their proportionate share of the purchase price whether paid by the vendee to the vendor or not.

■ ■ The Bulk Sales Law is primarily designed to prevent the vendor from putting his assets beyond the reach of bona fide creditors and also to protect a vendee who substantially complies with the requirements of the law. 37 C.J.S., Fraudulent Conveyances, § 471, pages 1320-1321; In re Thompson, D.C., 242 F. 602.

Upon a sale in bulk without compliance with the provisions of the Bulk Sales Law, the purchaser becomes trustee for the creditors and is deemed to hold possession of the property belonging to the vendor or to hold its equivalent in value. A sale made without compliance with the statute passes no title to the vendee as purchaser and he is personally liable to creditors, not for the amount due them, but for their proportionate share of but not exceeding the purchase price or value of the property. Musselman v. Grossman, 46 Idaho 780, 271 P. 462.

The authorities are not in complete harmony with reference to the effect of the omission of one or more creditors from the verified list otherwise properly supplied in accordance with the Bulk Sales Law. It presents a matter of first impression in Idaho. In some jurisdictions the decisions hold that the omitted creditors have no remedy against the vendee even if he has notice or knowledge of their claims before disbursing the purchase price. Other jurisdictions hold that the vendee is bound to hold any part of the purchase price still under his control when he learns of the existence of creditors whose names do not appear on the verified list. Under such latter decisions the trust extends into a general trust for all bona fide creditors of which the vendee obtained notice or knowledge before the purchase price is paid even though some are omitted from the verified list. In re Thompson,

D.C., 242 F. 602, which construed the statute of the state of Washington which is substantially the same as the statute of this state. See also Linn County Bank v. Davis, 103 Kan. 672, 175 P. 972, 9 A.L.R. 468; Fischer v. Rio Tire Co., Tex.Com. App., 65 S.W.2d 751; Chatfield v. Carter Bros. Equipment Co., 216 Ark. 46, 223 S. W.2d 1021; Rabalsky v. Levenson, 221 Mass. 289, 108 N.E. 1050; 37 C.J.S., Fraudulent Conveyances, §§ 482, 484, pages 1349, 1351.

We are of the opinion that the reasoning and conclusion reached by the court in the case of In re Thompson, supra, is in harmony with and tends to serve the spirit, intent and objectives of the law; hence when one or more of the bona fide creditors are omitted from the verified list of creditors furnished to the vendee and notice of such fact is brought home to the vendee before the purchase price has been distributed, the transfer is fraudulent and void as to such creditors, and the vendee must be held to hold in trust the proceeds of such sale for all known creditors. To do so is a substantial compliance with the law in this respect.

Respondents strenuously assert that simply because the vendee placed the entire purchase price on deposit to the account of its secretary as escrow holder, to be by him disbursed among the bona fide creditors, it constituted a non-compliance with the Bulk Sales Law and results in the sale or transfer being fraudulent and void and the

vendee being personally liable to all listed creditors for their proportionate share of the purchase price. In support of this contention respondents rely on Mitchell v. Waller, 83 Ga.App. 7, 62 S.E.2d 383. While the Georgia court unnecessarily announces such rule, it is distinguishable on the facts from the instant case; it appears therein that no notice was given to any creditors; this, without more, constituted substantial non-compliance; as the creditors learned of the transaction they would come to the attorney of the vendor for their money, who, in turn, would verify their claims, make out checks on the account and submit them to the escrow holder for his signature and then deliver such checks to the creditors. In any event, we decline to follow such a harsh and unrealistic rule.

It is not intended nor do we hold that payment of the purchase price to an escrow agent under any and all circumstances and conditions constitutes a substantial compliance with the Bulk Sales Law. We only hold that under and limited to the facts and record before this court the payment of the purchase price to the designated escrow holder, with instructions to apply the same to the payment of all bona fide claims of the several creditors, both listed and unlisted, of the vendor, on a pro rata basis, where the full purchase price is not sufficient to pay each such creditor in full, is a substantial compliance with and not a material invalidating departure from the requirements of the Bulk Sales Law.

It follows that the judgment should be and hereby is reversed with directions to dismiss the action without prejudice to the rights of respondents as creditors of the vendor under the Bulk Sales Law.

We do not pass on whether the reasonable value of the property is in excess of the purchase price because it is not now an issue herein; moreover, we do not pass upon the rights of any creditors of the vendor arising out of the transaction. Whatever rights exist are unaffected by this decision.

Costs to appellant.

Petition for rehearing denied.

PORTER, C. J., and GIVENS, TAYLOR and KEETON, JJ., concur.