Holmes B. HILL, Individually, Holmes B. Hill, as Agent for Mary Louise Oertel, and Mary Louise Oertel, Appellants,

v.

Norman J. THOMAS, Appellee.

Court of Appeals of Kentucky.

Dec. 4, 1970.

Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, for appellants.

George H. Logan, Louisville, for appellee.

CULLEN, Commissioner.

Norman J. Thomas recovered judgment against Holmes B. Hill and Mary Louise Oertel, jointly and severally, in the amount of $25,000, upon a verdict finding that he had been promised that sum as a "finder's fee" for procuring the sale of the controlling stock of Oertel Brewing Company to Brown-Forman Distillers, Inc. Hill and Miss Oertel have appealed, asserting numerous grounds of error.

At the time the alleged contract was alleged to have been made, the Oertel Brewing Company had 1,500 shares of stock outstanding. Liberty National Bank & Trust Company, Holmes B. Hill and Mary Louise Oertel, as trustees under the will of John Oertel, Sr., held 333 shares. Mary Louise Oertel was the ultimate beneficiary of that trust. Holmes B. Hill, as executor and trustee under the will of John Oertel, Jr., held 413½ shares. Marie Oertel, the widow of John, Jr., was the ultimate beneficiary of that estate. Mary Louise Oertel, who was the daughter of John, Sr., and the sister of John, Jr., owned individually 277⅚ shares. The remaining 475⅔ shares were owned by various employes of the brewing company and by other minority stockholders.

Holmes B. Hill owned no stock individually. He was, however, an officer and director of the brewing company and there was evidence that he was generally considered to represent and speak on behalf of the Oertel family interests in the conduct of the business of the corporation. Also there was evidence that he managed Miss Oertel's personal business affairs.

Thomas's testimony was that he was promised by Hill that if he, Thomas, would find a buyer for the "controlling interest in the Brewery"—"the stock of the Oertel family group"—at $400 a share, he, Thomas, would be paid $25,000, and that his understanding was that Hill was speaking on behalf of the Oertel family interests. Thomas did find a buyer—Brown-Forman Distillers—at the stipulated price, and the sale was made. However, Hill and the Oertel family interests refused to pay the claimed "finder's fee," maintaining that no contract for such a fee ever was made with Thomas.

Thomas brought the instant suit against Hill individually, the estate of John Oertel, Jr. (but not the John, Sr., trust), and Mary Louise Oertel individually. The trial court directed a verdict exonerating the estate of John Oertel, Jr., on the ground that Hill had no authority to bind that estate to pay a "finder's fee." The case went to the jury against Hill and Miss Oertel and the verdict held them both liable, jointly and severally, for the entire fee. In the trial court Hill and Miss Oertel were represented jointly by the same counsel, who continue to represent them jointly on this appeal.

■ At the time the alleged contract was alleged to have been made, Thomas was a director and executive vice-president of Oertel Brewing Company. The appellants' first contention is that as such he owed a fiduciary duty to the company and its stockholders and he could not validly contract to receive personal gain at the expense of the corporation or the stockholders. The contention is not valid because the fee to be paid Thomas was not at the expense of the corporation or of the stockholders collectively; it was at the expense of the particular stockholders on whose behalf the contract was made. An officer or director does not sustain a fiduciary relation to an individual stockholder with respect to his stock, but may deal with such stockholder concerning the sale of his stock practically on the same terms as a stranger. Waller v. Hodge, 214 Ky. 705, 283 S.W. 1047.

■ Along the same line, the appellants contend that there was no consideration for the alleged contract, because Thomas's duties under the terms of his employment as executive vice-president, for which he was being paid a salary of $25,000 per year, included the duty to find a buyer for the

brewery. The answer to this is found in the evidence that Thomas's duties as executive vice-president were only to operate and manage the brewery and to make it profitable. Possibly the making of an advantageous sale of the *assets* of the brewery, resulting in a benefit to the *corporation* as such, could have been considered to be within the scope of his official duties. But certainly his duties to the *corporation* as a corporate officer would not include the duty to obtain an advantageous sale of the *stock* of an individual stockholder.

■ A third contention of the appellants' is that if there was any contract it was only that Thomas, in the event of a sale of the brewery, would be guaranteed that he would continue to receive his salary for an additional year; that after the sale to Brown-Forman he did remain as executive vice-president, and receive his former salary, for more than a year; wherefore the contract was performed. The evidence, however, in our opinion warrants the conclusion that Thomas was to be paid $25,000 for finding a buyer for the Oertel stock, which payment had no relation to his salary other than it was identical in amount to a year's salary.

■ As a fourth ground of error the appellants assert that the evidence does not warrant the finding that Hill had any authority as agent to bind Miss Oertel as principal (as respects her individually owned stock). We think the evidence shows ample ostensible authority. Miss Oertel testified that after her brother's death, Hill had handled her business affairs. For a substantial period of time he had acted for her in the operation and management of the brewery. When the negotiations were being made with Brown-Forman he stated that he was in a position to deliver Miss Oertel's stock, and in fact he was, because when the sale was consummated the stock was delivered. Miss Oertel fully acquiesced in the sale. It may be true that he had no *express* authority from her to agree to pay a "finder's fee," but we think that his implied and ostensible authority to commit her to a *sale* of her stock included the authority to pay a broker's, salesman's or "finder's" commission.

■ The appellants assert as a fifth argument that the alleged contract violated clauses (3) and (4) of the Statute of Frauds, KRS 371.010, the first of which relates to a "promise of a personal representative as such to answer any liability of his decedent out of his own estate," and the second of which deals with a "promise to answer for the debt, default or misdoing of another." We think neither clause is applicable. There was no *liability* of a *decedent* that anyone promised to answer. Nor was there any promise to answer for anyone else's debt or default. As hereinafter explained, Miss Oertel is being held liable for her *own* debt, and Hill is being held liable by operation of law rather than on a personal promise.

The appellants' remaining contentions, though presented by the appellants as separate propositions, are so interrelated that we shall consider them as one. They are that (1) Hill cannot be held personally liable because he was acting as agent for a disclosed principal; (2) the instructions erroneously required the jury to find against Hill as agent if they found against Miss Oertel; and (3) Miss Oertel could at the most be held liable only for *part* of the "finder's fee," in the proportion her personally owned shares constituted of all of the Oertel family shares.

■ As we view the case, if Miss Oertel's liability were limited to her proportionate share of the "finder's fee" in accordance with the number of shares she owned individually, Hill could not be held liable for that portion of the fee, because as to her individually owned shares he was acting as agent for a disclosed principal. See Potter v. Chaney, Ky., 290 S.W.2d 44.

However, Hill would be personally liable for the remaining portions of the fee attributable to the shares owned by the estates of John Oertel, Sr., and John Oertel, Jr., under the established rule that if a personal representative makes an executory contract on a new and independent consideration it is his personal obligation and he will be bound thereby even though the debt was incurred for the benefit of the estate. See 31 Am.Jr., 2nd, Executors and Administrators, sec. 186, p. 105; Russell and Merritt, Probate Practice and Procedure, sec. 1016. The rule applies to contracts for payment of a broker's fee. See Annotation, 155 A.L.R. 1335.

█ Whether the liability should have been apportioned between Hill and Miss Oertel, or properly was adjudged to be joint and several, is a question to which there is not a simple answer. (The question is complicated by the fact that Miss Oertel was the *beneficial* owner of the shares held by the estate of John Oertel, Sr.) It is clear, however, that a valid basis existed for a full recovery by Thomas, however apportioned. Hill and Miss Oertel chose to be jointly represented by counsel in the case; they defended the case as if there were no conflict of interest between them, and they did not argue that there should be an apportionment between them. Under these circumstances we think it was proper for them to be held liable jointly and severally. If they are not satisfied with this, it is for them to work it out between themselves at some other time and place.

█ It is true that the instructions were erroneous as to Hill's liability as agent for Miss Oertel. For the reasons hereinbefore stated, however, we think the error was not prejudicial.

The judgment is affirmed.

All concur.