**John W. LOWE et al., Plaintiffs and Respondents,**

v.

**APRIL INDUSTRIES, INC., Defendant and Appellant.**

No. 13768.

Supreme Court of Utah.

Feb. 6, 1974.

4. 29A C.J.S. Eminent Domain § 143b.

Kenneth W. Yeates of Prince, Yeates, Ward, Miller & Geldzahler, Salt Lake City, for defendant and appellant.

John W. Lowe, Wallace D. Hurd, Salt Lake City, for plaintiffs and respondents.

HENRIOD, Chief Justice:

Appeal from a judgment on a jury verdict in a breach of stock registration agreement. Affirmed, with costs to respondents.

In 1916 Alta-Helena M&M was incorporated in Utah. By 1968 with assets of $28,000 it faced dissolution. Respondent Lowe, lawyer, secretary and director of the corporation who had performed various legal duties for the entity, suggested acquisition or merger possibilities. The directors responded. Lowe negotiated with one Parker in the summer of 1969.

A proposition arose where Parker would transfer an income-producing leasehold to Alta-Helena in exchange for the issuance of 750,000 shares of its common stock, giving Parker 70% control of the corporation. Also, Parker caused the Alta-Helena board to resign, to substitute his own directors.

Prior thereto a meeting was held in September, 1969, where the directors issued each board member 4,000 shares as compensation for past official operations. They also resolved that 20,000 shares be issued to compensate plaintiffs for legal services.

The compensation in stock, which had a book value of 5¢ per share, was paid in lieu of cash. The shares were restricted and ledgered for investment purposes only, and thus were not freely negotiable.

The board approved a resolution where Alta-Helena agreed to include the issued shares "for transfer in a registration statement, in the event the corporation should have a public offering of its shares."

In October, 1969, the board met to consider the Parker proposition. It approved it *subject to stockholder approval.* The stockholders approved.

Thereafter, the company was changed to April Industries, Inc. Plaintiffs submitted their shares for reissuance, which was done. April merged with a Puerto Rican outfit and reincorporated in Delaware.

In 1972, April made a public offering. The stock rose to 20¢ after a reverse stock split. It then had a bid price of $14 per share. One Eisenberg, who had replaced Kassel as April's counsel, contacted Lowe for information needed in a rough draft prospectus. Lowe informed him of the registration agreement and sent him a copy. Plaintiffs' shares were not included. Protests and demands for inclusion fell on deaf ears.

Finally, on June 7, 1972, the restricted shares along with some unrestricted ones were sent to Parker in New York demanding that restricted stock be replaced with unrestricted shares.

The certificates admittedly were lost.

■ The law says that no agent's acts that are statutorily unlawful can be ratified.[1]

■ Thus, for April to be bound on any theory of ratification, the directors' behavior cannot be violative of U.C.A., Section 16–10–33. It states:

. . . *The board of directors shall have authority to fix the compensation of directors* unless otherwise provided in the articles of incorporation. Such compensation so fixed, *shall be reported to the shareholders*, except in the case of a corporation subject to proxy rules issued by the Federal Securities and Exchange Commission under the Securities Act of 1934.

The statute calls for disclosure. It does not provide that such compensation be reasonable, nor does it so provide when such disclosure must be made.

Appellant argues that there was not proper disclosure and therefore the compensation fixed, at least as far as for directors' services, is void. We disagree. In

---

1. Elggren v. Woolley, 64 Utah 183, 228 P. 906 (1924).

March, 1970, April sent out a shareholder's report, stating the amount of shares issued, to whom and for what reasons. It is unrealistic to conclude that there was some kind of masterminded concealment. Even if it could be objected that disclosure in a routine stockholder's report six months later wasn't timely, the penalty for such an indiscretion should fall on the new management. Parker and Kassel not only had knowledge of the transaction, but for all practical purposes, this is how they wanted it. April's actions through them manifested complete satisfaction with what their predecessor directors had done.

In light of the above, the disclosure requirement (Section 16–10–33) was met by the March, 1970 report. We think that April now cannot complain and is estopped from using this statute as its shield, but a sword to run the plaintiffs through.

 Ratification is expressed or implied. Implied, where it arises under circumstances of acquiescence or where a duty to disaffirm is not promptly exercised.[2] Knowledge, usually, is a requisite to any form of ratification. As this concerns the law of corporations, knowledge of the entity is imputed to it from the knowledge possessed by its officers and agents.[3]

In this case, the Parker interests were informed prior to the merger that stock was being issued for services. They were present at the October board meeting in which the minutes elucidating the stock transaction of the September 30, 1969 meeting were read. There was evidence to show that the stock was issued consistent with the concern of both Parker and Lowe that the Alta-Helena assets were not depleted prior to consummation.

 The record indicates that April, through agents, had knowledge of the stock transaction all the way up until plaintiffs' suit and never once was there any indication of disaffirmance. Previously mentioned were the reissuance of the Alta-Helena shares into April shares and the stockholder's report as clear evidence of knowledge with no intention to repudiate. Also, even after Lowe became aware of the public offering and reminded Parker and counsel of the registration agreement, nothing came from April that manifested any intent to repudiate within a reasonable time. It had been over three years since this agreement was given first approval in September, 1969.

It appears that only when an underwriter chose not to include any further shares in its underwriting that April began to show signs of dishonoring the agreement. Regardless of what defendant April had in mind, we think its delay in repudiation gives rise to an implied or de facto ratification of this contract. Its previous silence and actions adduced from the evidence gives one no comfort or other conclusion than that the corporation and its new management had no objections to the stock for compensation, registration rights or anything else the old management had done at its suggestion, until it became difficult to respect these commitments. We think that its present complaints are not meritorious and that April ratified the agreement by its earlier failure to repudiate any part of it.[4]

Further issues raised either lacked merit or substantially concerned matters peculiarly within the province of the jury, where sufficient evidence appeared to support its findings. (All emphasis added.)

ELLETT, CROCKETT, TUCKETT, and MAUGHAN, JJ., concur.

2. 2 Fletcher Cyc. Corp., Sec. 796; Moses v. Archie McFarland & Son, 119 Utah 602, 230 P.2d 571 (1951).

3. Mary Jane Stevens Co. v. First Nat. Bldg. Co., 89 Utah 456, 57 P.2d 1099 (1936);

Crompton v. Jenson, 78 Utah 55, 1 P.2d 242 (1931).

4. Carlquist v. Quayle, 62 Utah 266, 218 P. 729 (1923).