PETERS GRAZING ASSOCIATION,
Appellant (Defendant below),

v.

Thomas LEGERSKI, Appellee
(Plaintiff below).

No. 4497.

Supreme Court of Wyoming.

Dec. 24, 1975.

Rehearing Denied Feb. 3, 1976.

See 546 P.2d 189.

Henry A. Burgess, Sheridan, signed the brief and appeared in oral argument on behalf of appellant.

Philip S. Garbutt and Bruce P. Badley, Badley & Shoumaker, Sheridan, signed the brief, and Philip S. Garbutt, Bruce P. Badley and Micheal K. Shoumaker, Sheridan, appeared in oral argument on behalf of appellee.

Before GUTHRIE, C. J., and Mc-CLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice, delivered the opinion of the court.

Walter F. Peters during his lifetime put together a fine large ranch in Sheridan County. When he died in April, 1973, it was valued in excess of $2,000,000.00. By his will, he directed that as soon as practical after his death his executor, R. R. Loss, sell and convert into cash all the lands used in his ranch operation, consisting of over 20,000 acres of deeded land, leases to about 2,400 acres of state and federal lands and three mountain permits for about 5,500 sheep.

The plaintiff-appellee, a realtor, somehow learning that the ranch was for sale, contacted Mr. Loss, executor of the Peters estate, for a listing of the property but was told that there would be no listing to any realtor in that a bid of at least $2,000,000.-00 from one of several prospective buyers had been assured. Thereafter, the plaintiff, in May, 1973, apparently got in touch with a Mr. Robert A. Barkley, the local Farmers Home Administration supervisor

in Sheridan County who had been contacted by a group of Peters neighbors, organized into the defendant-appellant, Peters Grazing Association, then unincorporated, with a view to obtaining an FHA loan to acquire the Peters ranch. Together they went to the office of the attorney for the estate, where the plaintiff was given full information about the fee acreage, lease acreage, mineral leases, grazing permits and other detailed data concerning the ranch. Mr. Barkley gave to the plaintiff a government form of option to prepare for the defendant association. When filled in by plaintiff, it was turned over to Mr. Barkley who, in turn, had it signed by a Mr. Dow, president of the grazing association, and by a Mr. Gutz, as its secretary. A form of standard purchase offer was also completed by plaintiff but it bore no signatures and was never executed by the parties to the proposed sale because custom drawn forms in the shape of letters were prepared by the attorney for the estate.

Plaintiff then took the documents to the executor but Mr. Loss refused to sign because of the other prospective purchasers. However, he did have his attorney prepare a letter, dated June 26, 1973, addressed to the plaintiff; in brief, it stated that plaintiff had contacted the executor indicating that he represented the Peters Grazing Association and the association wanted an option for 60 days to purchase the Peters ranch, but he did not want to sign the option because he had several parties interested and if one of them bought, he would not have to await the expiration of the option. The letter went on to say that the executor before ever signing an option or making any agreement in connection with it, wanted an understanding of what compensation that he, as the executor, would have to pay for the plaintiff's services in assisting a sale to the defendant grazing association and suggested a fee of $55,500.00 which would be less than the usual five or six percent, which it was indicated in a sale of this magnitude would

not necessarily apply. The paper closed by stating:

"In the event I do not receive the necessary guarantee of a $2,000,000.00 proposal from any one of the private parties by 4:00 p. m., on July 5th, would you be willing to assist me in effecting a sale to Peters Grazing Association, subject to the foregoing understanding relative to your compensation. * * *"

Plaintiff then endorsed an approval of the terms on the letter, the gist of which stated that he had not been given a sale listing but consented that:

"* * * If the Ranch is sold for $2,125,000.00 to Peters Grazing Association, then I agree that my compensation shall be computed on the basis set forth in your letter. I agree to assist you in every way I can to effect a sale to Peters Grazing Association and to help that Association acquire the necessary financing."

The defendant grazing association authorized a bid of $2,060,000.00, and submitted it to the executor, who thereupon agreed to sell the ranch for $2,030,000.00 provided that the Peters Grazing Association would pay for the services of the plaintiff. The specific provision, with respect to the fee, appeared in a letter by Loss to the association, which also set out 16 other separate terms of the sale, and provided as follows:

"(17) The Peters Grazing Association is to be responsible for any commission or fee that may be payable to Thomas Legerski of Legerski Realty Company for any service that Mr. Legerski may have performed on behalf of Peters Grazing Association in connection with the sale of the Walter F. Peters Ranch to the Association. The Association must obtain a written acknowledgment from Mr. Legerski directed to me in my capacity as Executor of the Estate of Walter F. Peters, that Mr. Legerski will look solely to the Peters Grazing Association for his compensation for services ren-

dered. I have never listed the property for sale with Mr. Legerski or any other realtor and the Association must protect me in this respect against the claim of Mr. Legerski, if he should assert a claim. I am sure that the Association will have no difficulty in working out a satisfactory arrangement with Mr. Legerski."

Somewhere during the course of these proceedings, it seems the district judge had informally indicated that he would not confirm any sale providing for the payment of a realtor's commission or fee. The question of the correctness of or reason for that judicial point of view is not involved in this case and it is brushed over lightly in the record but it apparently motivated the extensive documentation to assure that Legerski got paid.

On July 9, 1973, the Peters Grazing Association, by Jack C. Dow, its president, signed a letter to Mr. Legerski, which, after reciting and reviewing the fact that the executor would not pay a commission or other compensation on account of the purchase of the Peters ranch by the Peters Grazing Association, then went on to say:

"In view of the services that you have rendered and the effort that you have made on our behalf, we agree that if we are successful in acquiring the Walter F. Peters Ranch, subject to the reservations previously noted by Mr. Loss, for the sum of $2,030,000.00 that Peters Grazing Association will pay you $30,000.00, said payment to be accepted by you in full settlement of any claims that you may have for commission or for services rendered in connection with the acquisition of said ranch. Said payment would be made at the time of final closing, which would be on or about December 1, 1973."

The plaintiff, in writing delivered, acknowledged and accepted the terms of the letter.

The sale of the ranch was confirmed by the district judge and closed about December 1, 1973. The plaintiff made demand on the defendant for payment of the $30,000.00 fee; the defendant refused to pay on the ground that the plaintiff had never performed any services for it. Plaintiff filed this action and, upon trial, the district court found generally in favor of the plaintiff and awarded him a judgment for $30,000.00. Not having been requested, there were no special findings of fact and conclusions of law entered by the court. It is from that judgment the defendant appeals.

The defendant presents three grounds for error:

1. The Peters Grazing Association is not liable for any contract to pay appellee $30,000.00 entered into prior to date of its incorporation.

2. Legerski contributed no services for, or on behalf of, the Peters Grazing Association, and had no contract of employment to support a commission payable by the appellee, as buyer.

3. The Peters Grazing Association would not be unjustly enriched by $30,000.-00, as claimed by plaintiff, if his claim be denied.

The simple facts of this case are that the executor of the estate of Walter F. Peters may have agreed to pay a substantial commission for plaintiff's services, as a realtor, if the ranch was sold to the defendant. However, he found himself in a bind when it became apparent that the district judge would not allow any fee for the realtor. We make it clear in this connection that the record is absent any explanation in that regard, whether because of a general policy of the court or with respect to this case, in particular.[1]

1. The district judge who indicated such a disapproval was disqualified by plaintiff to sit on this case. It was tried by the district judge assigned as a result. It is conspicuous from his judgment that the trial judge saw no objection to what amounted to the payment of a realtor's fee by the estate. The land was sold under the direction and power of

The negotiations between the executor and the defendant then resolved themselves into the proposition that the offer of $2,060,000.00 by the defendant would be reduced to $2,030,000.00, provided that the defendant would pay a settled fee of $30,000.00 to the plaintiff. The defendant's witnesses claim that plaintiff performed no services for the association. Mr. Loss, the executor, emphatically says that the plaintiff performed no services for the estate. The documents admit to the contrary. Mrs. Peters consented to and urged the sale of the ranch to the Peters Grazing Association and requested that no further bids be received or considered. The estate netted its appraised value.

■ The defendant relies on the general rule that since a corporation cannot before its organization have agents contract for itself, or be contracted with, it is not liable upon any contract made by its promoters prior to its organization unless the obligation is assumed by its own act after corporate existence comes into being. *Williams v. McNally,* 1928, 39 Wyo. 130, 270 P. 411; *Durlacher v. Frazer,* 1898, 8 Wyo. 58, 55 P. 306, 80 Am.St.Rep. 918. The defendants in those cases claimed and the court held that the corporations did not assume the debts. We have no argument with that general rule as applied in those cases.

On the very same date, July 9, 1973, that all of the documents acknowledging Legerski's services were being signed, concurrently, the same law firm that prepared those documents was directed by the organizers of defendant, Peters Grazing Association, now a corporation, to prepare articles of incorporation for the defendant.

The articles of incorporation were filed in the office of the Secretary of State on July 13, 1973. The members of the association are the stockholders of the corporation. The president of the association signing the agreement became the president of the corporation. The secretary of the association signing the agreement became the secretary of the corporation. Shortly after the deed to the Peters ranch was delivered to the defendant, the corporation board of directors directed the officers to refuse payment of plaintiff's claim.

■ This court has never felt too kindly about the technical use of a corporate device as a means of slithering from under a contract or other lawful obligation. *State ex rel. Christensen v. Nugget Coal Co.,* 1944, 60 Wyo. 51, 67, 144 P.2d 944, 949. In fact, the principle of that case, in appropriate circumstances, would strip away the corporate fiction, and hold that the corporation is but the alter ego of an association of individuals composing it and hold those individuals liable. Even in *Williams v. McNally,* supra, it was recognized that if the evidence had been different and the defendant corporation accepted or realized any benefits from the plaintiff's work, a liability could accrue. The defendant here accepted the benefits of the three-way agreement between the executor, the plaintiff, and the defendant's predecessor association by taking and retaining the real estate at a reduced price but rejected its reciprocal responsibility. It was well said in *Chartrand v. Barney's Club, Inc.,* 9 Cir. 1967, 380 F.2d 97, 100:

"* * * it is generally held that if a corporation, with full knowledge of a

---

sale contained in the will, pursuant to § 2-283, W.S.1957:

"When property is directed by the will to be sold, or authority is given in the will to sell property, the executor may sell any property of the estate without order of the court, and at either public or private sale, and with or without notice, as the executor may determine; but the executor must make return of such sales as in other cases; and if directions are given in the will as to

the mode of selling, or the particular property to be sold, such directions must be observed. In either case no title passes unless the sale be confirmed by the court."

The defendant does not claim that the payment of a realtor's fee by an executor is unlawful. By any holding in this case, we do not approve or disapprove payment of a realtor's fee for the sale of estate property as a general proposition, under a power of sale in a will or otherwise.

contract that was formulated before the corporation came into evidence, accepts the benefits thereof, it will be required to perform the contract obligations. [Citing cases.] Such knowledge on the part of the corporation may be imputed from that of a promotor who has become a director, officer and major stockholder of the corporation he has helped to form. * * *"

█ Acceptance of the benefits of a contract amounts to an implied ratification by the corporation of a contract entered into prior to incorporation. *Lowe v. April Industries, Inc.,* Utah, 1975, 531 P.2d 1297; *Builders Homes of Georgia, Inc. v. Wallace Pump & Supply Co., Inc.,* 1973, 128 Ga.App. 779, 197 S.E.2d 839; *Mechanical Constructors, Inc. v. B–W Acceptance Corp.,* Okl.1966, 412 P.2d 957; *European Motors, Limited v. Oden,* 1959, 75 Nev. 401, 344 P.2d 195, citing *Federal Mining & Engineering Co. v. Pollak,* 1939, 59 Nev. 145, 85 P.2d 1008; *Rocky Mountain Powder Co. v. Hamlin,* 1957, 73 Nev. 87, 310 P.2d 404; *Albano v. Motor Center of Pocatello,* 1954, 75 Idaho 348, 271 P.2d 444; *Frye & Smith, Limited v. Foote,* 1952, 113 Cal.App.2d Supp. 907, 247 P.2d 825, citing *Scadden Flat Gold-Mining Co. v. Scadden,* 1898, 121 Cal. 33, 38, 53 P. 440, 442; *Park Addition Co. v. Bryan,* 1924, 102 Okl. 205, 228 P. 959; and *Weathersby v. Texas and Ohio Lumber Co.,* 1915, 107 Tex. 474, 180 S.W. 735, 7 A.L.R. 1440.

It is the further contention of the defendant that the plaintiff performed no services for the defendant and so therefore it owes plaintiff nothing. It has almost become a ritual that we remind appellants of the standard of review set out in *Stock v. Roebling,* Wyo.1969, 459 P.2d 780, 784, wherein it was said:

" * * * We must assume that evidence in favor of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in

conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. [Citing cases.]" [2]

What follows is a drawing of those inferences.

█ In the absence of special findings of fact, the reviewing court must consider that a judgment carries with it every finding of fact which is supported by the evidence. *Hendrickson v. Heinze,* Wyo.1975, 541 P.2d 1133, 1134; *School District No. 32 in Fremont County v. Wempen,* 1959, 80 Wyo. 311, 321, 342 P.2d 232, 235. A judgment will be affirmed on appeal if sustainable on any legal ground appearing in the record. *Heyl v. Heyl,* Wyo.1974, 518 P.2d 28, 30; *In re Romer,* Wyo.1968, 436 P.2d 956, 958.

█ In any event the totality of the evidence indicates that the extent of services performed and their value are the subject matter of compromise and settlement between the plaintiff, defendant and the executor and the defendant agreed to pay the settlement figure. That this is the case is found in the express language of the letter agreement of July 9, 1973, written by Peters Grazing Association by Jack C. Dow, president, to Mr. Legerski, the plaintiff. It states:

"In view of the services that you have rendered and the effort that you have made on our behalf, we agree that if we are successful in acquiring the Walter F. Peters Ranch, subject to the reservations previously noted by Mr. Loss, for the sum of $2,030,000.00, that Peters Grazing Association will pay you $30,000.00, said payment to be accepted by you *in full settlement of any claims that you may have for commission or for services rendered in connection with the acquisition of said ranch.* * * *" (Emphasis added.)

---

2. This rule appears in so many cases that it is impractical to list them. For others, see Appeal and Error, West's Wyoming and Pacific Digests.

The plaintiff placed his acknowledgment and acceptance upon that letter and stated, amongst other things:

" * * * The undersigned acknowledges that upon receipt of $30,000.00 from the Peters Grazing Association, that he will execute a proper receipt and release in favor of the Association. * * *"

A compromise was reached and settlement had when this is viewed with the other evidence in the case.

■■■■■ The law favors settlement of controversies. *Aimonetto v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania,* 10 Cir. 1966, 365 F.2d 599, 600. The settlement of a bona fide dispute or a doubtful or unliquidated claim, if made fairly and in good faith, is sufficient consideration for compromise based thereon. *Parsley v. Wyoming Automotive Co.,* Wyo.1964, 395 P.2d 291. As a part of the sale arrangements with the executor, the defendant, in consideration of a reduced sale price, agreed to reimburse the plaintiff-realtor. The executor was faced with his commitment to pay a fee of $55,500.00 for services of plaintiff, if the ranch was sold to the defendant. The evidence indicates that the plaintiff was threatening an action based upon the executor's promise. The settlement of an action either begun or threatened, unless it be founded on a fraudulent or fictitious claim, is a valid consideration for promises by a third party to pay the claim. *Bolln v. Metcalf,* 1895, 6 Wyo. 1, 7, 42 P. 12, 13, 71 Am.St.Rep. 898, affirmed 44 P. 694.[3] There is no evidence of fraud here and the evidence refutes any conception of fiction except in the sense we shall later discuss. See also State ex rel. *Wilson v. Young,* 1932, 44 Wyo. 6, 22, 7 P.2d 216, 222, 81 A.L.R. 114, 122, to the effect that for a valid compromise, there must, in fact, be a dispute or doubt as to the rights of the parties honestly entertained.

The facts of this case, as reflected by documents, present a false picture, if viewed literally. They represent an effort on the part of the executor to shift his undetermined and questioned liability for the payment of a broker's fee to the defendant. They created a mirage that the plaintiff's services were performed at the behest and on behalf of the defendant. The executor said it all when in his letter to the defendant agreeing to sell the ranch to it, he said, " * * * the Association must protect me in this respect against the claim of Mr. Legerski, if he should assert a claim. * * *" The association then pretended that the services had been performed for it in order to comply with the terms of the sale laid down by the executor. This devious manipulation of the true state of affairs was designed to avoid some conception that the then district judge would not approve payment of a broker's fee for sale of estate property. We shall not engage in any speculation in that regard. There was no hearing by the district judge involved. There is no record of what he said to whom and under what circumstances, if he said anything. It is clear from the record that this was the motive for all the paper shuffling—to avoid any possible disapproval of payment of a broker's fee. This misrepresentation is unattractive to the legal system and offensive to any concept of forthrightness.

However that may be, we cannot reach the executor in this proceeding. Neither he nor the estate is a party to this case. We cannot here decide any issues that may exist between the plaintiff and the Peters estate. The estate attorney, author of all documents, was plaintiff's witness. The

---

3. While this is an old case, it reflects the modern concept. "A compromise is an agreement between two or more persons who, to avoid a lawsuit, amicably settle their differences on such terms as they can agree on." 15A C.J.S. Compromise and Settlement § 1, p. 170, "There are many decisions holding that a claim which is entirely baseless does not afford a consideration for a compromise." 15A C.J.S. Compromise and Settlement § 10, p. 201.

executor did not intervene nor did any heir or anyone else interested in the estate become a party to the action.

In examination of all the circumstances, we repeat what has previously been inferred. This was a contract arrangement whereby the defendant agreed to pay plaintiff a broker's commission, owed to plaintiff by the Peters estate, under a settlement agreement between the plaintiff and the executor. The amount of the consideration agreed to be paid for the ranch took this into account. What actually exists contractually is a third party beneficiary contract. It was not necessary that plaintiff perform any services for the defendant.

It is a well settled rule of law that where one person agrees with another, on a sufficient consideration, to do a thing for the benefit of a third person, the third person may enforce the agreement, and it is not necessary that any consideration move from the latter. It is enough if there is a sufficient consideration between the parties who made the agreement. *Shreeve v. Greer,* 1946, 65 Ariz. 35, 40, 173 P.2d 641, 644–645. In a case having similar characteristics to the one before us a broker was engaged by the sellers, a sale was made and the buyers agreed with sellers to pay the commission to the plaintiff-broker. The court declared that: "It is well settled that third persons may bring an action on such a contract. [Citing cases.]" *Haldane v. Potter,* 1934, 94 Colo. 558, 561, 31 P.2d 709, 710. See also *Lane v. Davis,* 1959, 172 Cal.App.2d 302, 342 P.2d 267; *Holmes v. Kalbach,* 1953, 173 Kan. 736, 252 P.2d 603.

The Colorado, California and Kansas cases are selected only because they involve broker's fees. They represent a contract principle applied by this court in another situation. As said in *Kirch v. Nicholson,* 1931, 42 Wyo. 489, 493, 297 P. 398, 399, " * * * a promise may be made to one person for the benefit of another." The court held the plaintiff to be a party to the consideration and a real party in interest in a bond for stay of execution matter. The same rule is approved in *Coleman v. Mountain Mesa Uranium Corporation,* 10 Cir. 1956, 240 F.2d 12, 16, where it was held that a third party beneficiary can sue for enforcement of his rights under a contract, though he is not a party thereto and is not therein mentioned. The defendant's obligation to pay here arises not only out of its agreement directly with the plaintiff but also out of its agreement with the executor to make arrangements with the plaintiff. The executor obviously refused to proceed with the sale until that was done.

The rule goes even further, making it particularly applicable here. Where a person makes a promise to another for the benefit of a third person, such third person may maintain an action thereon even though he is a stranger to the contract and the consideration therefor and had no knowledge of the contract when it was made and was not specifically named therein so long as he is otherwise sufficiently described or designated. *Bailey v. Iowa Beef Processors, Inc.,* Iowa, 1973, 213 N.W.2d 642, cert. den., 419 U.S. 830, 95 S.Ct. 52, 42 L.Ed.2d 55; *Farmers Bank of State of Delaware v. Howard,* Del.Ch.1971, 276 A.2d 744; *Lamica v. Gerdes,* 1967, 270 N.C. 85, 153 S.E.2d 814; *Holmes v. Kalbach,* 1953, 173 Kan. 736, 252 P.2d 603.

There are many cases holding that a third person may enforce a contract made for his benefit though he did not know of the contract at the time it was made. *Keith v. Schiefen-Stockham Insurance Agency, Inc.,* 1972, 209 Kan. 537, 498 P.2d 265; *Boise Cascade Corporation v. Pence,* 1964, 64 Wash.2d 798, 394 P.2d 359; *In re Goff's Estate,* 1963, 191 Kan. 17, 379 P.2d 225; *Sauter v. St. Michael's College,* 1962, 70 N.M. 380, 374 P.2d 134; *Jones v. Adams,* 1947, 67 Idaho 402, 182 P.2d 963. These carry with them the connotation that no consideration need run from the third party to the promisor.

The beneficiary of a contract may sue to enforce such performance even though not named in the contract and not privy to its consideration, and even though the contract works to the advantage of the contracting parties and the purpose in conferring a benefit on third party was a selfish one, benefitting· or protecting themselves. *Silton v. Kansas City,* Mo.1969, 446 S.W.2d 129. The contract between defendant and the Peters estate was to protect the Peters estate from a claim, litigation and liability for a broker's commission.

A defense must be germane.

A breach of another contract not between the same parties is not a defense. Where the promisor agrees to pay a sum of money to a third party, to whom the promisee says he is indebted, it is immaterial whether the promisee is actually indebted to that amount at all, and defenses which promisee might have had available against third party are not available to the promisor. *Rouse v. United States,* 1954, 94 U.S.App.D.C. 386, 215 F.2d 872, 874. The defendant has no standing to question the settlement between plaintiff and the Peters estate, nor do we, because the estate is not a party to this action.

" * * * Insofar as intent to benefit a third person is important in determining his right to bring an action under a contract, it is sufficient that the promisor must have understood that the promisee had such intent. * * * No specific manifestation by the promisor of an intent to benefit the third person is required." *Lucas v. Hamm,* 1961, 56 Cal.2d 583, 591, 15 Cal.Rptr. 821, 825, 364 P.2d 685, 689, cert. den., 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525. The intent to pay the broker belonged to the Peters estate. It discounted the purchase price in order to pay plaintiff.

A third party beneficiary's right is both legal and equitable. " * * * As the courts and the law now are, the right of the third party beneficiary is merely a jural right, a right that historically was both 'legal' and 'equitable,' and still is insofar as those terms have any modern meaning and application." 4 Corbin on Contracts, § 779K p. 63 (1951 ed.). Corbin goes on to say in § 787, p. 95:

"If the promisee in a contract contemplates the present or future existence of a duty or liability to a third party and enters into the contract with the expressed intent that the performance contracted for is to satisfy and discharge that duty or liability, the third party is a creditor beneficiary. * * *"

This brings up the matter of the defendant's third point that it would not be unjustly enriched as claimed by the plaintiff. As noted by Corbin, the right is both legal and equitable and the equity of the matter goes on to explain one of the reasons for the rules which preclude defendant.

While this is not a pure case of unjust enrichment, it has some of its aspects. Ordinarily, the maxim of unjust enrichment arises and is applied in an action for money had and received or restitution or in other limited circumstances. See 30 C.J.S. Equity § 89, p. 982, and the cases there cited. We cannot help but view and take note of the inequity of the defendant's position because of its very presence. It would be inequitable to permit defendant to avoid payment of plaintiff's claim. It would result in a windfall to that organization and amount to unjust enrichment. Its offer for the ranch was $2,060,000.00. The lesser price of $2,030,000.00 was agreed upon solely for the purpose of shifting the obligation of payment to the defendant. There is a lack of any suggestion in the record of any offer to pay the Peters estate the $30,000.00 by which the sale price was reduced. It would unjustly gain not only at the expense of the plaintiff but at the expense of the Peters estate as well. As noted, when we slash through the underbrush, we find that the $30,000.00 was actually part of the consideration for the ranch and the defendant is without stand-

**459**

ing to assert any claim that plaintiff performed no services for it. This is part of the performance required by the Peters estate. There was a smoldering dispute between the estate and the plaintiff. It was resolved by a condition of the agreement between the executor of the Peters estate and the defendant that the plaintiff be paid and the price was reduced accordingly to accommodate the burden. We must look at the whole transaction, treating it as an entirety. A contract or contracts, as here, must be considered in the light of all the surrounding circumstances, related facts showing relations of the parties, the nature and situation of the subject matter and the apparent purpose in making the contract. *Houghton v. Thompson,* 1941, 57 Wyo. 196, 210, 115 P.2d 654, 658, and the cases there cited. This statement is made to bring to a point of convergence the fact that the plaintiff is the beneficiary of the agreement between the executor and the defendant. The agreement between plaintiff and defendant is ancillary to that and a device to carry into effect the Peters estate–Peters Grazing Association contract of sale, misleading as its tenor was. Plaintiff is a third party to that accord.

2 Williston on Contracts, 3d Ed., § 356A, pages 836–838, is explicit, where it is said:

" * * * it is the intent or purpose of the promisee who pays for the promise that has been generally looked upon as governing.

* * * * * *

"If an intent can be found to give a third party a right, the intent should be given effect; * * *."

We therefore hold that the defendant, by accepting the benefit of its preincorporation settlement contracts with the executor of the Peters estate and the plaintiff, is liable to the plaintiff in the sum of $30,000.00, in accordance with the judgment of the trial court.

There was no error.

Affirmed.

ROSE, J., concurs.

GUTHRIE, C. J., dissented with opinion in which McCLINTOCK, J., concurred.

GUTHRIE, Chief Justice, (dissenting).

The writer feels it necessary to file this dissent in order to express his concerned dismay with the result which the majority approved by affirming the judgment in this case. I cannot but feel that the remainder of the court has not fully considered the implications of the approval of this recovery.

I shall, in this dissent, rely upon only very general citations and summary discussion indicative of the rules which I believe applicable. This is done because it has no authority as precedent. I shall rely in nearly all instances on the statement of facts as appears in the majority opinion, which I believe fair and full in most instances.

The majority opinion recognizes that the facts in this case "present a false picture, if viewed literally. They represent an effort on the part of the executor to shift his undetermined and questioned liability for the payment of a broker's fee to the defendant. They created a mirage that the plaintiff's services were performed at the behest and on behalf of the defendant." It further styles it "a devious manipulation," with which this writer heartily agrees.

This record reveals a careful and determined effort to avoid submission of the question of the necessity and propriety of the employment of a broker to the judge sitting in probate, and the further avoidance of a determination of the reasonable fee therefor. In my view, by this decision this court approves such improper activity and has in effect said that you may do indirectly that which cannot be done directly, which is an anathema to this writer. Plaintiff cannot claim ignorance or that he was overreached as he contracted with this estate charged with the knowledge of the

law of the powers of the executor, *Cooley v. Frank*, 68 Wyo. 436, 235 P.2d 446, 451; *Blessing v. Pittman*, 70 Wyo. 416, 251 P.2d 243, 250; and this rule has even been applied to corporations, *Board of Com'rs of Johnson County v. Searight Cattle Co.*, 3 Wyo. 777, 31 P. 268, 270.

This writer would find no difficulty in holding this agreement or all these related agreements void as tending to impede the regular administration of justice, *Bacle v. Pickens*, Tex.Civ.App., 78 S.W.2d 260, 264; 17 C.J.S. Contracts § 223, p. 1056—which is also of application in matters affecting the administration of estates (see note 52, p. 1057, 17 C.J.S.)—but believes there are other reasons supporting this position, which it seems important to set out.

This writer sees a distinction to which I believe the majority has not given proper recognition. The executor of an estate whose acts are under the supervision of a court is governed by different rules and standards than an · individual who could freely contract without such supervision, and it is my view that some of the authorities cited are inapplicable by reason thereof.

It may be conceded that even absent statutory authority this executor could make a contract with this broker for his assistance and could personally compensate him. However, in absence of such statute the estate would not be liable but the executor would be personally liable, *In re Shaw's Estate*, 85 Cal.App. 518, 260 P. 351, 353; *Wilson v. Fleming*, 106 Cal.App. 542, 289 P. 658, 661–662; and see 3 Bancroft's Probate Practice, § 601, p. 165 (2d Ed.), and 2 Bancroft's Probate Practice, § 368, p. 362 (2d Ed.). Apparently the executor or his counsel was aware of this rule, as we must infer because of his apparent anxiety to in some manner protect himself from this liability even at the expense of the estate. In furtherance of this design he wrote the letter which is referred to in

the majority opinion, and in face of the bid from the appellee herein in the sum of $2,060,000 secured an instrument agreeing to this sale for the lesser amount from Mrs. Peters, whom we assume for purposes of this discussion is the sole heir, although the writer is not satisfied from the record that this is the case.

The executor had no authority to bind the estate for any broker's fee absent any specific statutory authority [1] or approval by the probate court. Any such purported agreement, which is the basis of plaintiff's claim, is void and unenforceable as against the estate for any brokerage fee without a determination of the reasonableness or necessity of the employment of such broker. The estate could not be bound by such an agreement without the consent of the probate court, *In re Shaw's Estate,* supra; *Lowrey v. Rego,* 65 Cal.App.2d 16, 149 P. 2d 706, 710; and this is so even though the contract was for the benefit of the estate, *Hill v. Thomas,* Ky.App., 462 S.W.2d 922, 926. See generally 33 C.J.S. Executors and Administrators § 198, pp. 1180–1182.

I cannot in any way join with the majority insofar as the affirmance of this case is based upon the theory that Legerski is entitled to recovery by virtue of being a third-party beneficiary of a contract between Loss as executor and appellant herein. In my view the holdings of *Heyl v. Heyl,* Wyo., 518 P.2d 28, 30, and *In re Romer,* Wyo., 436 P.2d 956, 958, are not applicable herein, and certain parameters of limitations within the issues and evidence must be recognized by this court or they could transform this court into a tribunal for retrial without even the opportunity of the parties to appear and present their positions on the new basis of disposal. Particularly is this true when it has not been raised or argued. In this case this approach demonstrably asserts a new basis for recovery upon which appellee has made no reliance nor has appellant had an

---

1. California has by statute authorized the executor to employ a real estate broker, but even then protects the estate with the words "contracts shall be binding in the amount allowed by the court." 53, West's Annot.Cal. Codes, Probate Code, § 760, p. 555.

opportunity to present to us any defense thereto.

Nor do I find the cases of *Hendrickson v. Heinze*, Wyo., 541 P.2d 1133, or *School District No. 32 in Fremont County v. Wempen*, 80 Wyo. 311, 342 P.2d 232, authority for a basis of disposal upon the third-party beneficiary theory because of factual distinctions, particularly in *Hendrickson* wherein the contention was asserted there was no substantial evidence to support the claim of contributory negligence, which was a question clearly presented by the pleadings. In *Wempen*, as the writer reads it, the question presented was whether the general jury finding included all subsidiary facts to sustain it. Neither case, in my view, justifies or commands a general exploration for possible new theories or findings outside the scope of the issues as a basis for disposal.

The record and evidence herein do not sustain such a basis for affirmance. Legerski in his complaint does not assert a right as a third-party beneficiary but claims under a contract directly with this association. In his testimony he reaffirms this claim and states that the letter agreements upon which he relies, and which are set out in the record as Exhibits 2 and 3, are the basis for his claim. The majority opinion sets out the complete paragraph in the letter from Peters Grazing Association signed by Dow, as president, to Mr. Legerski, but I think it proper to emphasize the following:

> *"In view of the services that you have rendered and the effort that you have made on our behalf* * * * in full settlement of any claims that you may have for commission or for services rendered in connection with the acquisition of said ranch. * * *"* (Emphasis supplied.)

In another letter by Loss to the association dated the same day, there appears a paragraph which is set out in full in the majority opinion but from which the writer excerpts the portion he believes material:

> *"* * * for any services that Mr. Legerski may have performed on behalf of Peters Grazing Association. * * *"* (Emphasis supplied.)

These clearly indicate the basis of plaintiff's asserted claim and the consideration therefor to have been services rendered to or on behalf of Peters Grazing Association and clearly demonstrate the nature of that claim.

To arrive at the result of the majority, it is my view the court has transgressed the principle recognized in *Phillips v. Hamilton*, 17 Wyo. 41, 95 P. 846, 848, and reiterated in *McGinnis v. General Petroleum Corporation*, Wyo., 385 P.2d 198, 203, and has assumed the duty of making a contract for these parties.

I would reverse the judgment herein for the reason there was and is no consideration for the agreement under which Legerski claims. I find no evidence in the record of any services which he contributed to the association. The association by its answer squarely raised the question of lack of consideration. The second point asserted in the appeal by appellant squarely raises the issue that appellee had performed no services for this association, which I construe as applicable to consideration. As reason therefor reliance is made upon the following statement of the law:

> "If in fact there was no consideration for a promise, it is not made enforceable by the fact that there is a written recital of consideration or an acknowledgement that a consideration has been received." 1 Corbin on Contracts, § 130, p. 558 (1963 Repl.); also see 1 Williston on Contracts, § 115B, pp. 468–469 (3d ed.).

The court, in *Allen v. Allen*, D.C.Mun. App., 133 A.2d 116, 118, recognized this rule in reliance upon both these authorities.

This issue was directly tendered in this appeal by the second ground which defendant asserts as error. In connection therewith there is unequivocal testimony of Legerski that Dow did not employ him to

buy the Peters ranch nor was there any agreement with either Mr. Dow or the association. He never showed the ranch to them nor produced the association as a buyer. The record is clear the association's interest was not occasioned by any activities of Legerski; and although Legerski attempts to involve Mr. Barkley as an agent of the association, and did say he worked for Mr. Barkley on behalf of the association, there is certainly no showing of any agency or authority on Barkley's part, and he is certainly not a member of the association. I cannot believe it is proper to substitute the view of the court as to what the contract was and what should have been pleaded or claimed.

I particularly disagree with any suggestion that this recovery could in any manner be justified on the doctrine of unjust enrichment and agree with the majority that this is certainly not a "pure case" of unjust enrichment but have some fear that the bench and bar may be misled by this discussion. The case of *Gard v. Razanskas*, 248 Iowa 1333, 85 N.W.2d 612, 65 A. L.R.2d 982, 986, contains a usable definition of the term "unjust enrichment," and it is to be noted that this definition relates this right to restitution but particularly to the party " 'when he is restored to the position he formerly occupied either by the return of something which he formerly had or by the receipt of its equivalent in money. . . . ' [Restatement of the Law, Restitution, § 1, p. 12]." There is demonstrably no element of that in this case. The only entity involved in this entire sorry picture which might successfully assert this would be the Peters estate, which has been the victim of an arrangement which deprived the trust res of that estate of $30,000.

In fairness to the association and because of the implication in the majority opinion that the association has engaged in some inequitable or improper activity, it would appear that the so-called equitable picture drawn by the majority should be supplemented by the following facts. The record shows that plaintiff was an uninvited volunteer who performed unsolicited acts and then coupled these with the implied threat of a suit, which led the executor into this unholy arrangement. In the absence of any showing of any services performed for the association by Legerski, and in light of the fact that when there was some discussion between the board of directors and Legerski of this claim he refused to state any services he had performed, and the fact he is a volunteer who might also be styled as an impudent interloper, I cannot see the equities which arise in his favor as mentioned in the section of this opinion which treats unjust enrichment.

This writer does not believe it improper to suggest that a large portion of the public has had for some years a jaundiced view of probate procedures and in many cases believe them to be utilized not for the best interests of the estate but as a vehicle for enrichment of lawyers—and in this case a real estate broker. The writer cannot deny that such inference might be readily available from the result reached in this case, and it is his view that such result encourages executors and their attorneys to exercise their ingenuity to escape supervisory control of the probate court and may well encourage the assertion of questionable claims.

McCLINTOCK, Justice, concurring in the dissent of GUTHRIE, Chief Justice.

Someone has said, "A man convinced against his will is of the same opinion still." I confess that the briefs and oral arguments in this case left me with the same sense of outrage expressed in the dissenting opinion of the Chief Justice. I was never convinced that there was any consideration running from the plaintiff to the association. I was inclined to question whether there was any real basis to say that a dispute existed between the executor and the plaintiff. Although I did spend considerable time in an effort to express my doubts and concerns, I did not possess the same scholarship shown by the Chief

Justice and was unable to compose what I thought would be a proper dissenting opinion. However, the dissent is in my opinion well taken, and even though I had previously indicated my concurrence in the majority opinion I must withdraw that and concur in the dissent.

ROSE, Justice (specially concurring in majority opinion).

I think we get into huge trouble when we undertake to look outside the issues of this case in order to point accusing fingers at problems and persons not in or parties to the action in an effort to justify or accommodate a result, whether it be a justification of the majority opinion or the dissent.

The cold facts are that the defendant could not have purchased the ranch at the price it did unless it had arranged to pay the plaintiff $30,000 and obtain a release of any claim that the plaintiff had against the estate. Whether it was right or wrong for the executor of the estate to lay on this condition before he would sell to the defendant is a matter between the executor and the defendant or it may be of concern to the heirs—or a problem of some other court in another case. If there are professional people whose ethics are in question, this might properly become a problem for resolve with the appropriate authority of the Wyoming State Bar—or ultimately this Court. But, in my judgment, at this juncture, these ancillary inquiries are *totally outside the issues of this case.*

In order to acquire the ranch properties and upon acknowledging that the plaintiff had performed valuable services in behalf of the estate, the defendant agreed to pay the plaintiff's fee in consideration of the plaintiff renouncing his claim. The purchase price of the property was fixed depending upon the defendant's discharging this obligation. Now that the defendant has the ranch it wants to renege on that promise. For me this constitutes a precise and accurate framing of the problem.

The defendant would not have been able to come by the properties at the price it paid if the plaintiff had not given up his claimed right of action. Whether the plaintiff could have proven employment and services rendered is not for us to here decide. He did in fact give up his right of action against the estate in return for the defendant's promise to pay $30,000. This was a settlement for which there was consideration running to both parties to this lawsuit.

I would say that the defendant has placed itself in a position where it may not now deny the debt. The plaintiff, in good faith and to his detriment, relied on the promise of the defendant when he released his claim. This concept enables me to reach my concurrence with the results of the majority opinion. Like the Chief Justice, I have some problems with the majority's third-party-beneficiary theory.

Whether the claim was good—bad—or indifferent, it was never alleged to have been fraudulent and it seems to me that we are treating this case as though the issue were fraud. The parties did not allege or prove or rely upon this theory of law (even though they probably should have), and I, at the appellate level, would not go outside the issues or in search of other parties in an effort to bring fraud into the case.

I can relate to the outrage of the Chief Justice when the inferences and the innuendoes of these transparent shenanigans are considered, but my outrage comes out of apparent wrongdoing that is really not before us either for decision or rectification. It may be that these matters should have been before us here or should be before us in another action—but I do not believe that sins or wrongs which are not within the four corners of the lawsuit should be given our accounting.

All whose conscience troubles them should feel our anger but our anger should not cloud our judgment.

I would concur in the result of the majority opinion.